UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H., et al., | No. 2:21-cv-00690-KJM-JDP |
| Plaintiffs, | ORDER |
| v. | |
| Sacramento County Dept. Child, Family and Adult Services, et al., | |
| Defendants. | |

Cynthia Martin and her three minor children, A.H., E.H., and C.G., through their guardian ad litem Mary E. James, bring this action after defendants temporarily took custody of the minors. Defendants Sacramento County Department of Child, Family and Adult Services and Brenda Bryant move to dismiss the claims against them. For the reasons below, the court **grants the motion.**

**I.     BACKGROUND**

Plaintiff Cynthia Martin (Martin) and nonparty Jeffrey Martin are the parents of minor plaintiffs: A.H., E.H., and C.G.  Compl. ¶¶ 4, 24, 31, ECF No. 1.  In February 2019, A.H. fell at school and staff members inspected him for injury.  *Id*. ¶¶ 23, 77(d).  As part of the inspection the staff had A.H. strip naked without the consent and presence of Martin.  *Id*. ¶ 23.  The inspection uncovered a burn on A.H.'s leg, which the staff believed Martin caused based on A.H.'s

/////

1

description of how the burn occurred. *Id.* at 23–24. A mandated reporter informed Child Protective Services (CPS). *Id.* ¶ 23.

As a result, Martin was listed on the Child Abuse Central Index (CACI), *id.* ¶ 36, and Brenda Bryant, a social worker with the Sacramento County Department of Child, Family and Adult Services (DCFAS) went to the plaintiffs' home to investigate, *id.* ¶¶ 6, 31. On her first visit after this incident, Bryant told Jeffrey Martin he should seek full custody of the children but following that meeting he moved to another state. *Id.* ¶ 31. When Bryant returned to the plaintiffs' home, she had a protective custody warrant for the minor plaintiffs. *Id.* ¶¶ 33–34. Bryant removed A.H. from the home and left instructions for E.H., and C.G. to be dropped off at the Children's Receiving Home. *Id.* Eventually Martin regained custody of her children and the court dismissed the case against her, but Martin's name remains on the CACI list. *Id.* ¶ 38. Plaintiffs maintain there was no reason for defendants to remove the children because any reports of abuse were false. *Id.* ¶ 35.

Plaintiffs bring this action against DCFAS by and through CPS, Elk Grove Unified School District, Bryant, Maas, and Does 1–25.[1] *See generally* Compl. The plaintiffs sue the individual defendants in their individual and official capacities. *Id.* ¶¶ 6 & 9. Plaintiffs bring five claims. Under 42 U.S.C. § 1983 the plaintiffs allege: 1) unreasonable search and seizure in violation of the Fourth Amendment against all defendants; 2) retaliation in violation of the First Amendment against all defendants; 3) procedural and substantive due process violations under the Fourteenth Amendment against Bryant and Maas and Does 1–25; and, 4) *Monell* liability against DCFAS, CPS, and Elk Grove Unified School District. Under state law the plaintiffs allege intentional infliction of emotional distress against all defendants.

/////

---

[1] The complaint identifies Does 1–25 as CPS and DCFAS employees, Compl. ¶¶ 7 & 12. If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

Previously, Elk Grove Unified School District and Susanna Maas moved to dismiss, Mot. ECF No. 7; Mem., ECF No. 7-1. The court granted the motion and dismissed Elk Grove Unified School District and Maas over the plaintiffs' opposition. Prev. Order (Sept. 20, 2021), ECF No. 20; Opp'n, ECF No. 9.

The remaining defendants now move to dismiss. Mot. to Dismiss, ECF No. 30. The motion is fully briefed and submitted without oral argument. Opp'n, ECF No. 33; Reply, ECF No. 34; Min Order, ECF No. 35.

## II.   LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS

### A.   Official Capacity

The plaintiffs sue Bryant in both her official and individual capacity. Compl. ¶ 6. The defendants move to dismiss the claims against Bryant in her official capacity as redundant of the suit against DCFAS. Mot. at 4. Plaintiffs oppose, relying on case law addressing supervisory

1  liability and qualified immunity. Opp'n at 5. However, neither body of case law addresses the
2  issue here. Because "[a]n official capacity suit against a municipal officer is equivalent to a suit
3  against the entity. . . . the court may dismiss the officer as a redundant defendant" when the
4  officer is sued in her official capacity. *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty.*
5  *Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citations omitted). Thus, to the extent Bryant is
6  sued in her official capacity, the claims are redundant, and the court dismisses them without leave
7  to amend. However, plaintiffs may still be able to allege claims against Bryant in her individual
8  or personal capacity to the extent consistent with the discussion below.

        **B.**      **Fourth Amendment**

10  Next, the defendants move to dismiss the plaintiffs' Fourth Amendment claim for
11  unreasonable search and seizure. Mot. at 4.
12  Regarding Martin, defendants argue she may not allege a Fourth Amendment violation
13  because she was not subject to search or seizure. *Id*. In response, the plaintiffs cite *Safford*
14  *Unified Sch. Dist. No. 1 v. Redding* (*Safford*), 557 U.S. 364 (2009), a case in which a "mother
15  sued a school alleging that the strip search the school subjected her daughter to was in violation of
16  the [Fourth] Amendment . . . ." Opp'n at 6. While it was the mother who filed the suit, the
17  relevant claim was an alleged violation of the minor daughter's Fourth Amendment rights.
18  *Safford*, 557 U.S. at 369. The court does not read *Safford* as allowing a mother to assert her own
19  Fourth Amendment claim based on the defendant's search of her child. To the extent the mother
20  was involved in asserting her daughter's claim, it was likely in her capacity as guardian ad litem,
21  a role Martin is not filling here. *See* Prev. Order at 4. There is no basis for finding Martin can
22  assert her children's rights vicariously given the personal nature of Fourth Amendment rights.
23  *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (citation omitted). As an unreasonable search
24  or seizure is an essential element of a § 1983 claim alleging a violation of the Fourth Amendment
25  right to be free from search, *see Karam v. City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003),
26  Martin's Fourth Amendment claim is dismissed with leave to amend, if possible, within the
27  confines of Rule 11. *See* Fed. R. Civ. P. 11(b); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma*
28  *Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("Courts may decline to grant leave to amend only if

there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" (citation omitted)).

Regarding the minor plaintiffs, defendants argue that although the minor plaintiffs were taken into protective custody, the seizure was pursuant to a valid warrant. Mot. at 5. "[T]he Fourth Amendment safeguards children's 'right . . . to be secure in their persons . . . against unreasonable . . . seizures' without a warrant." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (quoting U.S. Const. amend. IV). It "protects a child's right to be free from unreasonable seizure by a social worker." *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1154 (9th Cir. 2020) (citation omitted), *cert. denied sub nom.*, 141 S. Ct. 1501 (2021). "Under the Fourth Amendment, government officials are ordinarily required to obtain prior judicial authorization before removing a child from the custody of her parent." *Kirkpatrick*, 843 F.3d at 790. A warrantless seizure is only permissible if done based on a reasonable belief "the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000).

Here, as the complaint itself alleges, Bryant obtained a warrant before taking custody of the children. Compl. ¶ 33. Warrants—and the affidavits supporting them—are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (discussing search warrants). A warrant may be invalidated if the defendant engaged in judicial deception to obtain it. *See Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018). A judicial deception claim requires a showing that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Id.* The plaintiffs allege the defendants' conduct lacked "any sufficient factual or legal basis." Compl. ¶ 46. But the complaint does not include factual allegations about the warrant's validity or "whether [Bryant] obtained that warrant by either making false statements or withholding material information." *Brown v. Alexander*, No. 13-1451, 2016 WL 829071, at *5 (N.D. Cal. Mar. 3, 2016). The court dismisses the Fourth Amendment claim as asserted by the minor plaintiffs with leave to amend.

5

C.     **First Amendment**

Next, the defendants move to dismiss the plaintiffs' First Amendment retaliation claim. Mot. at 5. A First Amendment retaliation claim requires plaintiff to show: (1) "the plaintiff was engaged in constitutionally protected activity"; (2) "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009) (citation omitted). The plaintiffs are correct that temporal proximity between a protected activity and the alleged retaliatory action can support such a claim. Opp'n at 8; *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021). However, the issue at bar is whether the complaint features an allegation of protected activity. The complaint contains factual allegations to support a retaliation claim against the now dismissed defendant Elk Grove Unified School District, as Martin filed a complaint against the school district before the actions giving rise to this case took place. Compl. ¶¶ 39–40, 50–51. However, with regards to Bryant, the complaint only claims that "Bryant removed the children . . . in retaliation" after Martin "questioned Bryant's authority and bases for removal of her children." *Id.* ¶ 53.

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). At present, the court cannot ascertain how Martin "questioned" Bryant, whether Martin's questioning amounted to criticism, and if Martin was otherwise engaged in speech protected by the First Amendment. The complaint contains "no allegations that [Martin's] questioning was published to anyone," Mot. at 6, in contrast to *Capp v. County of San Diego*, 940 F.3d 1051 (9th Cir. 2019). In *Capp*, the father of two minor children alleged a plausible First Amendment retaliation claim against the County's Health and Human Services Agency, which investigated him for abusing and neglecting his children after he sent a letter criticizing the Agency employees for interviewing the children without his consent, in which he also threatened legal action. *Id.* at 1051, 1058. Furthermore, this claim appears to be asserted by all the plaintiffs, but there is no hint that the minors engaged

6

in any First Amendment conduct at all.  The court dismisses the First Amendment claim with leave to amend.

### D.        Fourteenth Amendment

The defendants also move to dismiss the Fourteenth Amendment claim asserted by the plaintiffs.  Mot at 6.  The plaintiffs assert violations of both "procedural and substantive due process."  Compl. ¶ 56.

Starting with procedural due process, to state a claim plaintiffs must plead "(1) a protectible liberty or property interest . . . and (2) a denial of adequate procedural protections."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).  "[P]arents 'have a well-elaborated constitutional right to live' with their children that 'is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency.'"  *Kirkpatrick*, 843 F.3d at 789 (citations omitted) (quoting *Wallis*, 202 F.3d at 1136).  The plaintiffs allege they did not receive "fundamentally fair, orderly, and just judicial proceeding[s]."  Compl. ¶ 56.  However, this conclusory statement does not demonstrate exactly what procedural protections the plaintiffs were entitled to and denied.  Additionally, the plaintiffs allude to Bryant's making false statements throughout her investigation, but it is unclear whether she made statements that amount to judicial deception, which could potentially provide a basis for a procedural due process claim.  *See Keates*, 883 F.3d at 1241.  The plaintiffs' procedural due process claim is dismissed with leave to amend if possible.

Turning to substantive due process, to the extent this claim is asserted by the minor plaintiffs the Ninth Circuit has held that the claims of children taken into custody are properly evaluated under the Fourth Amendment.  *Id.* at 1236 (observing courts evaluate such claims "under the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteenth Amendment right to familial association").  Any claim of substantive due process by the minor plaintiffs based on their right to familial association is dismissed without leave to amend.  *See Sonoma Cnty.*, 708 F.3d at 1117 ("Courts may decline to grant leave to amend [ ] if there is strong evidence of '. . . futility of amendment, etc.'").

As far as Martin is concerned, "[i]t is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010) (citations and alterations omitted). "To amount to a violation of substantive due process, however, the harmful conduct must 'shock the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (alterations omitted) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). The parties agree "the shock the conscience" standard applies here. Mot. at 8; Opp'n at 8. Whether a defendant's conduct shocks the conscience turns on the facts of the case. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998).

Actions that "shock the conscience" are "arbitrary," *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992), "egregious," "deliberate," "unjustifiable by any government interest," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–50 (1998), "brutal," "offensive," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957), deny rights "implicit in the concept of ordered liberty," and violate the "decencies of civilized conduct," *Rochin*, 342 U.S. at 169, 173. "Conduct which was not intentional, but rather was deliberately indifferent, may nevertheless rise to the conscience-shocking level in some circumstances." *Cotta v. Cnty. of Kings*, 79 F. Supp. 3d 1148, 1177 (E.D. Cal. 2015), *aff'd in part, rev'd in part*, 686 F. App'x 467 (9th Cir. 2017) (unpublished). Negligent conduct does not shock the conscience. *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, the plaintiffs' current allegations regarding defendants' actions do not identify conduct so horrific as to shock the conscience. *See Kulya v. City & Cnty. of San Francisco*, No. 06-6539, 2008 WL 4415116, at *7 (N.D. Cal. Sept. 26, 2008) (granting defendants summary judgment where defendant social worker's conduct did not shock the conscience when "the agency determined that a further investigation was warranted and, having placed the child in the mother's care, erred on the side of caution in not returning the child to the previous custody schedule which would have required placing [the minor] back in the care of his father, against

8

whom an investigation was pending"); *cf. Kelson v. City of Springfield*, 767 F.2d 651, 652–53 (9th Cir. 1985) (finding behavior shocks conscience where defendants left boy alone in school bathroom with gun after he attempted to rob his teacher of spare change and then showed vice principal suicide note); *Cotta*, 79 F.Supp.3d at 1177–79 (collecting cases). Viewed in light of the applicable case law, the factual allegations do not show Bryant's conduct rose above mere negligence. The complaint also does not plead the defendants' actions otherwise amounted to an "unwarranted interference" with plaintiffs' Fourteenth Amendment right to familial association. *Cf. Crowe*, 593 F.3d at 876. The court dismisses Martin's substantive due process claim, but with leave to amend.

### E. *Monell* Liability

Next, the defendants argue the plaintiffs' claim for *Monell* liability must be dismissed. Mot. at 10. Municipal governments are only liable for "their own illegal acts" under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis omitted). Ultimately, to establish municipal liability under *Monell*, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011) (citation omitted).

Even if the plaintiffs adequately alleged an underlying constitutional violation, the *Monell* claim could not survive this motion to dismiss. There are four ways a plaintiff can show a municipal policy exists to establish *Monell* liability. The plaintiff can show: (1) "an official policy;" (2) ratification by a "final policymaker;" (3) "a failure to train, supervise, or discipline;" or (4) "a pervasive custom or practice"." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). The plaintiffs appear to rely only on the fourth method. *See* Opp'n at 9. In stating their *Monell* claim, plaintiffs describe at a high level of generality "policies, customs, and practices" they claim caused their injuries. Compl. ¶¶ 64–65. For example, the plaintiffs allege without more the DCFAS has a policy of "keeping investigations open despite a lack of

probable cause." *Id.* ¶ 65(b). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In simply listing vaguely characterized policies, the plaintiffs neglect to allege any specific policies or incidents, other than those that occurred in this case, to demonstrate a widespread custom. The court dismisses the *Monell* claim with leave to amend.

### F. Intentional Infliction of Emotional Distress

Lastly, the defendants seek to dismiss the claim for intentional infliction of emotional distress (IIED). Mot. at 9. An IIED under California law requires: (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing emotional distress or reckless disregard of the probability of causing emotional distress; (3) plaintiff's suffering of severe emotional distress; and (4) actual and proximate causation of plaintiff's emotional distress by defendant's conduct. *See Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). Sufficiently outrageous conduct rises to a level exceeding the bounds usually tolerated in civilized society. *Simo v. Union of Needletrades, Indus. & Textile Employees, Sw. Dist. Council*, 322 F.3d 602, 622 (9th Cir. 2003).

Here, the plaintiffs allege that "Bryant engaged in an inappropriate and leading interview of [the] [m]inor [p]laintiffs . . . ." Compl. ¶ 77(a). Plaintiffs also allege Bryant "made false statements to support allegations of child abuse . . .", said she would not remove the younger minors if Jeffery Martin got sole custody of them, and "maintained the juvenile dependency case with unfounded allegations." *Id.* ¶¶ 77(b)–(c). In opposing the motion to dismiss this claim, the plaintiffs do not cite any case law and the court has found none supporting the position that these allegations can support a IIED claim. The absence of any detailed description of Bryant's interviews with the children prevents the court from finding there is a plausible allegation that her conduct was extreme or outrageous.

The misrepresentations of a social worker may in some cases support an IIED action. While the facts do not perfectly mirror the case before this court, one example is *D.C. by &*

10

*through Cabelka v. County. of San Diego*, 445 F. Supp. 3d 869 (S.D. Cal. 2020).  In that case, Cabelka accepted custody of foster child based on the false representations of county social workers that the child had no psychological or behavioral issues.  *Id*. at 878.  But the defendants knew this representation was false as they were aware this child was "difficult [ ] to place in part because of his medical issues and in part because of his behavioral and psychological problems which included violent outbursts and sexualized behaviors." *Id* (quoting Compl.).  Cabelka ultimately made several reports to defendants that the child had "viewed child pornography" and sexually assaulted three other children in the home, inflicting serious trauma. *Id.* at 879.  The court found Cabelka and the minor plaintiffs plausibly alleged an IIED claim against the defendants because county social workers misrepresented the child's history, refused to remove him after the assaults, and told Cabelka not to report the assaults to the police. *Id*. at 900–01.  In the instant case, plaintiffs allege the social worker, Bryant, inflicted the trauma.  At first glance, this distinction would seem to make plaintiffs' IIED claim stronger than that in *Cabelka*.  However, the degree and nature of the harm inflicted during the interview and removal process is not as severe as that caused by defendants in *Cabelka*.  In particular, the plaintiffs do not include any meaningful allegations about what emotional distress the children suffered or Bryant's intent.  At this time the court finds the factual allegations are insufficient to show the defendants' conduct rose to the level of extreme or outrageous, or caused the plaintiffs' severe emotional distress.  The court dismisses this claim with leave to amend.

## IV. CONCLUSION

The court **grants** the defendants' motion to dismiss (ECF No. 30).  Plaintiffs **shall file any amended complaint within 21 days of this order.**

IT IS SO ORDERED.

DATED:  March 22, 2022.

CHIEF UNITED STATES DISTRICT JUDGE