**Vincent W. Davis, Esq. (SBN 125399)**
**Edna V. Wenning, Esq. (SBN 130377)**
**Law Offices of Vincent W. Davis & Associates**
**440 E. Huntington Drive, Suite 100**
**Arcadia, CA 91006**
**Phone: (626) 446-6442**
**Facsimile: (626) 446-6454**

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A. H., a minor, by and through his Guardian ad Litem, MARY E. JAMES; E. H., a minor, by and through his Guardian ad Litem, MARY E. JAMES; C. G., a minor, by and through her Guardian ad Litem, MARY E. JAMES; CYNTHIA MARTIN, an individual,<br><br>PLAINTIFFS<br><br>v.<br><br>SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, by and through CHILD PROTECTIVE SERVICES; BRENDA BRYANT, an individual; and DOES 1 through 25, inclusive,<br><br>DEFENDANTS. | No. 2:21-cv-000690-KJM-JDP<br><br>**FIFTH AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Violation of Civil Rights Under 42 U.S.C. § 1983 – 4th Amendment – Unreasonable Search/Seizure<br><br>2. Violation of Civil Rights Under 42 U.S.C. § 1983 – 1st Amendment – Retaliation<br><br>3. Violation of Civil Rights Under 42 U.S.C. § 1983 –14th Amendment – Violation of Procedural and Substantive Due Process<br><br>4. Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Liability<br><br>5. Intentional Infliction of Emotional Distress<br><br>REQUEST FOR JURY TRIAL |

Plaintiffs allege as follows:

1.      This complaint asserts violations of civil rights and related claims against the COUNTY OF SACRAMENTO DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES by and through

<div style="writing-mode: vertical">LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446-6442, FACSIMILE (626)446-6454</div>

CHILD PROTECTIVE SERVICES, BRENDA BRYANT, and various individual employees or representatives of the same.

## JURISDICTION AND VENUE

2.     Jurisdiction is proper as the violation of Plaintiffs rights occurred in and around the County of Sacramento, and the amount in controversy exceeds $25,000.  Pursuant to Code of Civil Procedure § 394 and § 395, the County of Sacramento is a proper venue for the claims set forth herein.

## PARTIES

3.     Plaintiff Cynthia Martin (hereinafter "Plaintiff" or "CYNTHIA") is an individual, competent adult, who, during all times relevant as described in more detail below, engaged with the Sacramento County Department of Child, Family and Adult Services ("DSFAS"), by and through Sacramento Child Protective Services ("CPS"), by and through numerous employees, representatives, or agents of the same, in and around Sacramento, individually.

4.     Plaintiff A.H; E.H.' and C.G are minors and individuals who, during all times relevant as described in more detail below, engaged with the Sacramento County Department of Child, Family and Adult Services ("DSFAS"), by and through Sacramento Child Protective Services ("CPS"), by and through numerous employees, representatives, or agents of the same, in and around Sacramento, through their Guardian Ad Litem, Mary E. James (hereinafter "James")

5.     A.H. was and is at all times the adopted son of Cynthia, a minor child, born in or around Nov. 2012, and was and is in the legal and physical custody of Cynthia as described in more detail below. At all relevant times, A.H. has suffered from and continues to suffer from autism, delayed speech impediment, and attention-deficit/hyperactivity disorder ("ADHD").  Plaintiff E.H., is at all times herein mentioned is the adopted son of Cynthia, born in or around November 2010, and was and is in the legal and physical custody of Cynthia.  Plaintiff C.G., is at all times herein mentioned is

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

the biological daughter of Cynthia, born in or around January 2007, and was and is in the legal and physical custody of plaintiff Cynthia.

6.      Defendant COUNTY OF SACRAMENTO is a local public entity organized under the laws of the State of California (hereinafter referred to as "COUNTY OF SACRAMENTO" or "SAC"). The Sacramento County Department of Child, Family and Adult Services (hereinafter referred to as "DCFAS" or "the Department") is an agency of Defendant COUNTY OF SACRAMENTO designated to administer laws and programs relating to protective services for children, foster care, and adoptions. DCFAS operates the CHILD PROTECIVE SERVICES, hereinafter ("CPS"). DCFAS and CPS operate under the policy direction of the SACRAMENTO County Board of Supervisors and the California Departments of Social Services and Health Services.

7.      At all times relevant herein, CPS employed Defendant BRENDA BRYANT (hereinafter referred to as "BRYANT") as a Social Worker charged with the investigation, monitoring, and management of juvenile dependency matters, which included – at certain times as stated below – the matter of the minor children, A.H.; E.H.; and C.G. BRYANT was an individual residing, on information and belief, in the County of SACRAMENTO, and at all times relevant herein was an officer, agent and employee of Defendant DCFAS by and through CPS. Defendant BRYANT is sued herein in her individual capacity with respect to all claims asserted herein with respect to any state law claims that allow for such liability.

8.      At all times relevant herein, CPS employed Defendants DOES 1 through 10 charged with the investigation, monitoring, and management of juvenile dependency matters, which included – at certain times as stated below – the matter of the minor children A.H.; E.H.; and C.G.

9.      At all times alleged herein, Defendant EGUSD, and HELEN CARR CASTELLO ELEMENTARY SCHOOL had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders,

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

10.    DOES 1-25 are – on information and belief – unknown social workers, supervisors, managers, investigators, or deputy directors that were at all relevant times employed by Defendant DCFAS/CPS, and who participated in, approved of, or otherwise acquiesced in the actions and misconduct of the other named defendants as described herein, resulting in the deprivation of Plaintiff's civil rights and injuries to her person, as is described below. These unknown defendants include policymakers that created, fostered, acquiesced in, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and his injuries.

11.    Plaintiffs are ignorant of the true names and capacities of these Doe Defendants, though all are believed to have been employed by the respective public entities identified above, or otherwise acting in concert with other named defendants and in their capacity were acting as state actors but alleges that each such defendant was in some intentional or negligent manner responsible for the injuries suffered by Plaintiffs.

12.    Defendants, and each of them, performed the wrongful acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

13.    At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

///

///

///

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**FACTS COMMON TO ALL CLAIMS**

14.    Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

15.    **Plaintiffs allege that they have been denied access to her records, and the facts alleged in the First Amended Complaint are solely based off the Detention and Jurisdiction report.**

16.    Plaintiffs were previously deprived of their interests protected by the Constitution and/or laws of the United States of America, as well as California, and suffered injuries to their person, and such deprivation was caused by defendants – by commission and omission – while defendants acted under color of law.

17.    All acts and/or omissions perpetrated by each defendant, except any governmental entity defendant or any defendant only in their official capacity, were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff, and were done so despicably and with evil motive and/or intent, or alternatively with a willful disregard of the rights and injuries of Plaintiffs.

18.    At all times relevant as set forth herein, Plaintiff CYNTHIA resided in the County of Sacramento, with her spouse and children, Minor Plaintiffs A.H.; E.H.; and C.G.

19.    Minor Plaintiff A.H. attended Helen Carr Castello Elementary School, located at or near 9850 Fire Poppy Drive, Elk Grove, California, which is a school under the supervision, control, and authority of Defendant EGUSD.

20.    From 2012 through 2019, plaintiff CYNTHIA, being black, and her family have been the target of numerous unfounded allegations of premises checks, code enforcement checks, neglect, welfare checks and safety checks.   These allegations remained unfounded.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

21.    On or about February 25, 2019, defendant CPS received a referral from a mandated reporter alleging that minor A.H. was out of school for two weeks and when he returned to school on Monday, February 25, 2019, had a large burn on his leg.  A.H.'s mother CYNTHIA had called the school the first week A.H. was absent that he would be kept at home due to fever.  CYNTHIA did not call the second week because school was out. When A.H. returned to school on February 25, 2019 he apparently fell on the playground prompting school personnel to conduct an inspection which exceeded the scope of inquiry.   A.H. was required to strip his undergarments to inspect his right thigh, without the consent and presence of his adoptive mother, CYNTHIA.  A.H. was stripped naked. A.H. is autistic and had no capacity to comprehend what his civil rights were with regard to onsite- inspection of his person at school. When A.H. was stripped, his upper right thigh area showed a burn in the healing stages.

22.    According to the mandated reporter, A.H. told the reporter that his mother and father were fighting, and the mother's hot coffee spilled on his leg when the father was grabbing the mother's keys to her Lexus. A.H. also allegedly stated that he escaped out the window and tried to open the door of the van to get the keys for his mother.   A.H. added that his mother did not take him to the doctor for medical care.

23.    The mandated reporter's account was not true, and BRYANT failed to investigate ethe claims, or take into account that A.H. was falsely making the story up.  No such fighting between the father and mother occurred.   A.H. got a cup of coffee from the microwave, placed it on the counter and when he tried to take it from the counter, spilled the coffee on himself.   A.H. also stated in another interview that either his sibling E.H. or C.G. spilled coffee on him, but not his mother.

24.    Plaintiff CYNTHIA decided not to take A.H. to the emergency room for wound care since she has worked in hospitals and knew how to care for wound at home.   Her mother-in-law, Janice Calloway, is a Registered Nurse living with her at home so both CYNTHIA and the R.N. cared for

A.H.'s wound at home.  The R.N. advised CYNTHIA what bandages to use and how often to change the dressing for proper wound care.

25.    Subsequently, Dr. Berman of Kaiser saw A.H. on February 28, 2019, reported the wound to be 4 cm x 5 cm superficial burn wound with 2 small open areas. School employee/Nurse MAAS reported that when she saw A.H.'s injury on February 25, 2019, it was covered with a gauze that was too small to cover the wound.  She also reported that the child had the same gauze dressing the following day and that the child was wearing the same clothes he wore the day before.   This was not true as CYNTHIA and Janice Calloway, the R.N., were changing the dressing daily and A.H. had several uniform clothes of the same color and style and was changing clothes daily as well.  Despite this, Nurse MAAS reported that A.H. wore the same pair of pants, underwear, shirt, and jacket for three days in a row. Plaintiff CYNTHIA showed a CPS worker the school uniforms she had for A.H. which had the same color and style.   The school made several calls to CPS complaining about plaintiff CYNTHIA.  The school definitely showed a dislike to plaintiff CYNTHIA as evidenced by the constant emails sent to CPS about plaintiffs that CPS had to tell the school to stop using the system for non- CPS matters.

26.    On February 27, 2019, a picture of A.H.'s wound was emailed to Child Abuse expert Dr. Angela Vickers who reported that the burn looked like it could be an accidental burn caused by hot water and coffee but needs medical care.   Dr. Vickers suggested the child be taken to Shriners Hospital. Defendant BRENDA telephoned CYNTHIA and demanded that A.H. should be taken to the doctor's office that same day, or she would obtain a court order to remove the children.

27.    Unbeknownst to CYNTHIA, defendant had already obtained a warrant at that time to remove the children from her care. CYNTHIA took A.H. to Kaiser ER that same day and the doctor did not provide any treatment for the wound but said to keep an eye on it and to return if it got infected.  The Kaiser doctor also called defendant BRYANT and told her that it was just a burn and the

*MARTIN v. County of Sacramento*– Complaint for Damages

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

history/description provided by CYNTHIA corroborated with the physical evidence of the wound. There was no further treatment needed as the wound was healing. Both Dr. Berman and Dr. Vickers opined that A.H.'s burn was consistent with the accidental history given by CYNTHIA.

28.     Defendant social worker BRYANT nevertheless wanted A.H. to be seen at Shriners Burn Center. CYNTHIA spent 6 to 7 hours at Shriner's Hospital with no different outcome. A team of 3 to 4 doctors evaluated A.H. and concluded that the burn looked like an accident and not an episode of child abuse. They called defendant BRYANT and told her the same findings that there was no child abuse involved and the wound was healing.

29.     On February 27, 2019, defendant social worker BRYANT interviewed A.H. with the help of a para-educator. A.H. reported that the coffee was hot and black and was spilled on her by his sister, C.G. They inspected the wound and it appeared to be healing and some scars have fallen off.

30.     On February 28, 2019, defendant BRYANT came to plaintiffs' home unannounced accompanied by Elk Grove Police officers to assist with the home visit. Plaintiff CYNTHIA's husband JEFFREY MARTIN who had no history with social workers was home.

31.     Defendant BRYANT warned JEFFREY MARTIN that if he wanted to keep the two younger children at home, J.M. (age 2) and J.M. (8-month-old), he had to leave plaintiff CYNTHIA because CYNTHIA was a bad parent, and he should seek full custody of J.M. and J.M. Unfortunately, JEFFREY MARTIN was so shocked and harassed by the presence of BRYANT and the police officers that he did not share this information with plaintiff CYNTHIA until after he left their home and moved to another state thereby breaking the family unit as a proximate result of the lies and harassment perpetrated by defendant BRYANT.

32.     Defendant BRYANT never asked CYNTHIA what caused the burn on A.H. Due to the fear instilled in JEFFREY MARTIN by BRYANT, JEFFREY's mother who was living with them was also manipulated by BRYANT who was attributed to have made a statement that the children were

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

left unsupervised by plaintiff CYNTHIA, denied caring for A.H.'s wound and that she had seen the children A.H., E.H., and C.G. out in the streets at night without proper supervision. Later, Janice Calloway explained that her statements were taken out of context by BRYANT.

33.    On March 1, 2019, defendant BRYANT received a call from Dr. Stacy of Shriner's Hospital who reported that the burn was already healing on its own and scheduled a follow-up appointment. Defendant BRYANT asked CYNTHIA for copies of A.H.'s records from the doctor visits, but CYNTHIA declined to produce citing HIPPA protection and reported that A.H. did not need any further treatment. Defendant BRYANT apparently did not like this conduct.

34.    On March 4, 2019, defendant BRYANT, accompanied by ER response worker Esmeralda Medina and Elk Grove police officers arrived at plaintiffs' home to execute a protective custody warrant for the children. A.H. was sleeping at home, but CYNTHIA, E.H. and C.G. were out.  A.H. was taken into custody. CYNTHIA's husband was not home but spoke with the social worker. Defendant BRYANT advised JEFFREY MARTIN that the smaller children were not being taken into protective custody on condition that the father JEFFREY MARTIN and his mother, COLLOWAY would be protective of them, and would seek full custody of the two smaller children through probate court, further breaking up the family.

35.    JEFFREY MARTIN who was already terrorized by the prior visit of BRYANT and the police officers did not want to have any trouble with law enforcement, left the family home and fled to another state, formally breaking the family apart as a proximate result of defendant BRYANT's harassment and misrepresentation instilling fear and break-up of the family unit. Defendant BRYANT imposed a condition precedent on her not enforcing removal of the two younger children on JEFFREY's seeking full custody and leaving plaintiff CYNTHIA to deal with the removal of minor plaintiffs A.H., E.H., and C.G. A social worker should strive to unify families, not break them up.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

*MARTIN v. County of Sacramento*– Complaint for Damages

36.     Since CYNTHIA did not arrive at the home, defendant BRYANT and the police officers left leaving instructions to paternal grandmother that the children E.H. and C.G. should be taken to Children's Receiving Home (CRH) that same day in conformance with the protective custody warrant and failure to do so would lead to her arrest.

37.     Plaintiff CYNTHIA drove E.H. and C.G. to CRH that same night and returned home to an empty house with no children and no husband.

38.     BRYANT's warrant stated that the children were at risk for emotional damage and removal was necessary, but that was a bold face lie. There was no real reason for the children to be removed. Spitefully BRYANT ignored all the experts and doctors who said the wound was "accidental" and "was child abuse." BRYAN T forced CYNTHIA to take the A.H. to Shriners Burn Center and after waiting 7 hours, 4 doctors confirm that this was accidental and "not an episode of abuse." This was yet another opinion that the burn was accidental, yet BRYANT chose to ignore the doctors' opinions as she wanted the children removed from CYNTHIA no matter what. Since BRYANT couldn't prove physical abuse, she said the children are going to suffer emotional, and there is substantial danger to them, which was a lie.

39.     While the three children were in foster care, they were never provided medical check-ups. The warrant alleged that there was substantial danger to the physical health of the children who were alleged to have been suffering from emotional damage and that removal from plaintiff CYNTHIA was necessary.

40.     There was no reason for the children's removal from home; A.H.'s burn wound was healing and there was no sign of abuse at home and E.H.. and C.G. were not in danger of physical or emotional damage. Defendant BRYANT threatened CYNTHIA that she would be arrested if CYNTHIA did not take the children to CRH.  CYNTHIA was further told to adhere to the case plan or wait for nine months.  The children were removed from their parents' home despite the absence of

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

*MARTIN v. County of Sacramento*– Complaint for Damages

imminent danger and without considering the least restrictive placement such as placement with relatives prior to placing the children in foster homes in violation of the provisions of Title 22, Division 31 of the Manual of Policies and Procedures, Child Welfare Services.

41.     As a result of the false allegations in the protective warrant and the juvenile dependency petition, plaintiff CYNTHIA's name was falsely reported and listed in the Child Abuse Central Index (CACI) system leading to her termination on February 21, 2019, from her job as a social worker for a Foster Family Agency (FFA) and as a home health medical social worker. Her name continues to remain in the CACI system preventing her from obtaining any gainful employment as a social worker.   Plaintiff CYNTHIA is a sole provider for the entire household.

42.     The Ninth Circuit has "long recognized that a custom or practice can be 'inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'"Hunter v.County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d 924, 929 (9th Cir. 2001)). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) holding modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001.

43.     Based on information and belief, the County of Sacramento Department of Child Protective Services  has a long-standing custom and practice of favoring certain races over other parents who have inherently immutable characteristics such as being black and brown, instead of being white. Online legal research of racial discrimination in Sacramento resulted in 1,317  cases, 45 of which involved social workers, approximately  28  cases filed in the US District Court Eastern District and some in the US Court of Appeals for the Ninth Circuit..  Attached and incorporated herein as Exhibit A is a copy of the LEXIS printout of the 45 cases. Also attached as Exhibit B is a copy of a press

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

release involving settlement of plaintiffs' claim alleging social workers' fabrication of evidence, concealed exculpatory evidence and violations of plaintiffs' rights under the 4th and 14th amendments to the U.S. Constitution.  Exhibit C is a partial printout of unpublished cases filed against Sacramento County Department of Child, Family and Adult Services (2019 to 2022).  Exhibits A, B and C prove that there is sufficient notice for defendant County of Sacramento that there is a prevailing custom and practice of racial discrimination involving social workers in the County which should have been addressed and/or corrected in order to avoid violations of the constitutional rights of its citizens such as plaintiffs herein.  This prevailing practice resulted in defendant Bryant's unmitigated fabrication of evidence and harmful conduct.   Bryant's conduct was due to plaintiff Cynthia Martin's race.

46.    As a proximate result of the unfounded allegations of all defendants and each of them leading to the removal of the minor children, all plaintiffs suffered from and continue to suffer the pain of separation as a family; the family unit imploded, and the children's lives were disrupted causing emotional distress and damages.

47.    The children were finally returned to plaintiff CYNTHIA and the case was eventually dismissed, however, CYNTHIA's name remains on the CACI list despite the unfounded allegations causing permanent impairment of her ability to practice her professional as a social worker or obtain any gainful employment.   CYNTHIA remains unemployed and unable to seek gainful employment due to her continued listing in the CACI index thus permanently barring her from practicing her profession as a social worker.

48.    As a result of the conduct of Defendants, Plaintiffs have suffered severe, pervasive, and ongoing emotional distress and psychological harm, which Defendants inflicted on Plaintiffs intentionally and with reckless disregard for the same.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

*MARTIN v. County of Sacramento*– Complaint for Damages

49.    The actions of Defendants, and each of them, were reckless, willful, malicious, and with a conscious disregard for the civil rights of Plaintiffs as well as the well-being and best interests of all plaintiffs. Such wrongful conduct necessarily entitles Plaintiffs to seek punitive damages from individual Defendants' wrongful acts for the purpose of punishing said Defendants, to make an example out of them, and to discourage such misconduct in the future.

**FIRST CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983 – 4th Amendment – Unreasonable Search and Seizure**

**Against Defendants SACRAMENTO COUNTY DCFAS/CPS; BRENDA BRYANT; AND DOES 1-25**

50.    Plaintiffs A.H, through his GAL, JAMES hereby incorporate the preceding paragraphs as though fully set forth herein.

51.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment IV and XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right to be free from unlawful searches and seizures under the Fourth Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiffs of their constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

52.    As described in more detail elsewhere in this Complaint, Defendants violated the rights of minor plaintiffs by creating a false allegation that Plaintiff CYNTHIA was engaged in abusive and/or neglectful treatment of minor A.H.., which directly and proximately caused minor A.H. to be subjected to searches of his person that were invasive, unnecessary, embarrassing, and due to the lack of justification, in of themselves constituted improper and abusive treatment of a minor child.

53.    The actions of Defendants were willful, knowing, purposeful, and were done with the understanding that such actions would reasonably cause both Plaintiff Cynthia and A.H.. to suffer

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

*MARTIN v. County of Sacramento*– Complaint for Damages

severe emotional harm. Furthermore, such actions by Defendants were done with the specific intent to punish or otherwise teach Plaintiff CYNTHIA a lesson due to her repeated and insistent denials that she had ever abused A.H. or otherwise committed any sort of neglect.

54.    Employees of Defendant DCFAS/CPS – including but not limited to Defendants BRYANT in particular – continued their investigation on or about February 2019 after lacking any sufficient factual or legal basis to do so. Employees of EGUSD, including, on information and belief, defendant Ms. MAAS inspected A.H who was stripped naked without the consent and presence of his mother, CYNTHIA or his Guardian ad Litem, JAMES. On information and belief, Plaintiffs assert that EGUSD and Ms. MAAS and DOES 1-5 engaged in such unlawful searches in an effort to justify continuing investigation and removal of A.H. despite knowing that they did not have lawful basis to do so, solely in the hopes that eventually they would uncover something that would justify filing a petition for removal of A.H. from Plaintiff CYNTHIA's custody and care.

55.    Defendants' conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiff CYNTHIA and to A.H., as stated elsewhere in this complaint

### SECOND CAUSE OF ACTION

#### 42 U.S.C. § 1983 – 1st Amendment – Retaliation

#### Against Defendants BRENDA BRYANT, SACRAMENTO COUNTY DCFAS/CPS AND DOES 1-25

56.    Plaintiff CYNTHIA re-allege, adopt, and incorporate the preceding paragraphs as if fully set forth herein.

57.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment I and XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right of free speech and the right to petition the government for redress under the First Amendment were in

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution. This right to petition includes but is not limited to Plaintiffs' rights to petition for administrative redress and complaints of misconduct without being subject to retaliation by Defendants as a result of such exercise of her rights.

58.      Defendant BRYANT warned JEFFREY MARTIN that if he wanted to keep the two younger children at home, J.M. (age 2) and J.M. (8-month-old), he had to leave plaintiff CYNTHIA because CYNTHIA was a bad parent, and he should seek full custody of J.M. and J.M. Unfortunately, JEFFREY MARTIN was so shocked and harassed by the presence of BRYANT and the police officers that he did not share this information with plaintiff CYNTHIA until after he left their home and moved to another state thereby breaking the family unit as a proximate result of the lies and harassment perpetrated by defendant BRYANT.

59.      Defendant BRYANT never asked CYNTHIA what caused the burn on A.H.  Due to the fear instilled in JEFFREY MARTIN by BRYANT, JEFFREY's mother who was living with them was also manipulated by BRYANT who was attributed to have made a statement that the children were left unsupervised by plaintiff CYNTHIA, denied caring for A.H.'s wound and that she had seen the children A.H., E.H., and C.G. out in the streets at night without proper supervision. Later, Janice Calloway explained that her statements were taken out of context by BRYANT.

60.      On March 1, 2019, defendant BRYANT received a call from Dr. Stacy of Shriner's Hospital who reported that the burn was already healing on its own and scheduled a follow-up appointment. Defendant BRYANT asked CYNTHIA for copies of A.H.'s records from the doctor visits, but CYNTHIA declined to produce citing HIPPA protection and reported that A.H. did not need any further treatment. Defendant BRYANT apparently did not like this conduct.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

61.    On March 4, 2019, defendant BRYANT, accompanied by ER response worker Esmeralda Medina and Elk Grove police officers arrived at plaintiffs' home to execute a protective custody warrant for the children. A.H. was sleeping at home, but the CYNTHIA, E.H. and C.G. were out. A.H. was taken into custody. CYNTHIA's husband was not home but spoke with the social worker. Defendant BRYANT advised JEFFREY MARTIN that the smaller children were not being taken into protective custody on condition that the father JEFFREY MARTIN and his mother, COLLOWAY would be protective of them, and would seek full custody of the two smaller children through probate court, further breaking up the family.

62.    JEFFREY MARTIN who was already terrorized by the prior visit of BRYANT and the police officers did not want to have any trouble with law enforcement, left the family home and fled to another state, formally breaking the family apart as a proximate result of defendant BRYANT's harassment and misrepresentation instilling fear and break-up of the family unit. Defendant BRYANT imposed a condition precedent on her not enforcing removal of the two younger children on JEFFREY's seeking full custody and leaving plaintiff CYNTHIA to deal with the removal of minor plaintiffs A.H., E.H., and C.G. A social worker should strive to unify families, not break them up.

63.    Since CYNTHIA did not arrive at the home, defendant BRYANT and the police officers left leaving instructions to paternal grandmother that the children E.H. and C.G. should be taken to Children's Receiving Home (CRH) that same day in conformance with the protective custody warrant and failure to do so would lead to her arrest.

64.    Plaintiff CYNTHIA drove E.H. and C.G. to CRH that same night and returned home to an empty house with no children and no husband.

65.    BRYANT'S warrant stated that the children were at risk for emotional damage and removal was necessary, but that was a bold face lie. There was no real reason for the children to be removed.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Spitefully BRYANT ignored all the experts and doctors who said the wound was "accidental" and "was child abuse." BRYAN T forced CYNTHIA to take the A.H. to Shriners Burn Center and after waiting 7 hours, 4 doctors confirm that this was accidental and "not an episode of abuse." This was yet another opinion that the burn was accidental, yet BRYANT chose to ignore the doctors opinions as she wanted the children removed from CYNTHIA no matter what. Since BRYANT couldn't prove physical abuse, she said the children are going to suffer emotional, and there is substantial danger to them, which was a lie.

66.    While the three children were in foster care, they were never provided medical check-ups. The warrant alleged that there was substantial danger to the physical health of the children who were alleged to have been suffering from emotional damage and that removal from plaintiff CYNTHIA was necessary.

67.    There was no reason for the children's removal from home; A.H.'s burn wound was healing and there was no sign of abuse at home and E.H. and C.G. were not in danger of physical or emotional damage. Defendant BRYANT threatened CYNTHIA that she would be arrested if CYNTHIA did not take the children to CRH.  CYNTHIA was further told to adhere to the case plan or wait for nine months.  The children were removed from their parents' home despite the absence of imminent danger and without considering the least restrictive placement such as placement with relatives prior to placing the children in foster homes in violation of the provisions of Title 22, Division 31 of the Manual of Policies and Procedures, Child Welfare Services.

68.    As a result of the false allegations in the protective warrant and the juvenile dependency petition, plaintiff CYNTHIA's name was falsely reported and listed in the Child Abuse Central Index (CACI) system leading to her termination on February 21, 2019, from her job as a social worker for a Foster Family Agency (FFA) and as a home health medical social worker. Her name

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

continues to remain in the CACI system preventing her from obtaining any gainful employment as a social worker.   Plaintiff CYNTHIA is a sole provider for the entire household.

69.      As described in more detail elsewhere in this Complaint, Employees of EGUSD, and Ms. MAAS violated Plaintiffs' rights by retaliating against Plaintiff CYNTHIA when she complained, criticized, or otherwise communicated to MS. MAAS and/or DOE had no business instructing A.H. to strip naked in an effort to expose his upper right thigh and pursue unfounded allegations of child abuse against plaintiff CYNTHIA using the burn in A.H.'s upper right thigh as pretext for further investigation, harassment and removal of A.H. from plaintiff CYNTHIA.

70.      Defendants' conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiffs, including Plaintiff A.H. in particular, as it disrupted his educational opportunities for him despite A.H. suffering from cognitive and interaction disabilities including autism.

71.      Defendant BRYANT removed the children based on unfounded allegations in retaliation against plaintiff CYNTHIA who questioned BRYANT's authority and bases for removal of her children.

72.      In addition, these individual Defendants who acted both individually capacity, employees and/or officials on behalf of government agencies, deliberately engaged in corruption, retaliation, and violations of Plaintiffs clearly established constitutional rights.  As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity.  Punitive damages are sought against the individual defendants according to proof.

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983 – 14th Amendment

## Violation of Procedural and Substantive Due Process

## Against Defendants BRENDA BRYANT, and Does 1-25

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

73.    Plaintiff CYNTHIA re-alleges, adopts, and incorporates the preceding paragraphs as if fully set forth herein.

74.    Defendants violated Plaintiffs' 14th Amendment right to procedural and substantive due process by preventing Plaintiffs from receiving a fundamentally fair, orderly, and just judicial proceeding, as described in this Complaint. In doing so, Defendants acted under color of law without reasonable probable cause. Defendants were deliberately indifferent to, or in the alternative were in fact motivated by a willful and malicious disregard of the rights of Plaintiffs.

75.    Defendants, as well as unknown Doe Defendants, continually, repeatedly, and unfairly refused to conduct a competent, fair, and objective investigation and evaluation of Plaintiff CYNTHIA's fitness to maintain custody of all minor plaintiffs.  Each Defendant was responsible for evaluating the information available to them in good faith and giving each piece of evidence proper weight.

76.    In multiple instances as described herein, Defendants refused to communicate with or cooperate with Plaintiff, often to the point of making false statements to Plaintiff CYNTHIA, and CYNTHIA's husband, JEFFREY MARTIN who was threatened and made to promise that he would be spared from removal of the two other smaller children provided JEFFERY MARTIN separate from and obtain sole custody of the smaller children thereby breaking the family unit.   Defendants' conduct, and each of them, were knowing, intentional, and in reckless disregard of the truth and Plaintiffs' civil rights as part of a purposeful effort to create a legally colorable basis to institute removal proceedings with respect to all minor children or at least maintain an open investigation despite the complete lack of evidence that any actual abuse had ever occurred.

77.    Defendant BRYANT warned JEFFREY MARTIN that if he wanted to keep the two younger children at home, J.M. (age 2) and J.M. (8-month-old), he had to leave plaintiff CYNTHIA because

CYNTHIA was a bad parent, and he should seek full custody of J.M. and J.M. Fearful that BRYANT would remove his two younger children, and because JEFFREY MARTIN was so shocked and harassed by the presence of BRYANT and the police officers that he did not share this information with plaintiff CYNTHIA until after he left their home and moved to another state thereby breaking the family unit as a proximate result of the lies and harassment perpetrated by defendant BRYANT.

78.    Further, BRYANT's deception did not stop with JEFFREY MARTIN, Bryant deceived the Court by stating the children were at risk for emotional harm, which she knew was a lie. Unfortunately, BRYANT was unable to prove physical abuse, after she tried so hard, she accused CYNTHIA of emotionally abusing her children and convinced the Judge to sign the warrant. warrant stated that the children were at risk for emotional damage and removal was necessary, but that was a bold face lie. There was no real reason for the children to be removed.

79.    As a result of BRYANT's deceptive comments, Plaintiff CYNTHIA was abandoned by her husband JEFFREY MARTIN who moved to another state bringing the two smaller children with him for fear of the smaller children being removed from him and taken into custody as well. Plaintiff CYNTHIA's family unit has been permanently destroyed and efforts are currently being undertaken for the family to heal from the nightmare that defendants set in motion.   Plaintiff CYNTHIA's name remains listed in CACI thereby preventing her from exercising her profession as a social worker and from providing financial support to her family.   The actions of Defendants deprived Plaintiffs of their due process rights under the 14th Amendment and in violation of the First Amendment Right to familial association and freedom from retaliation.

80.    As a result of Defendants' misconduct, Plaintiffs suffered severe emotional pain and suffering, shame, and embarrassment.

81.    In addition, the individual Defendants who worked for Defendant DCFAS/CPS who are

government officials, deliberately engaged in corruption, retaliation and violations of Plaintiffs clearly established constitutional rights. As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity. Punitive damages are sought against the individual defendants employed by Defendant DCFAS/CPS according to proof.

**FOURTH CAUSE OF ACTION**

**Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Claim**

**Against Defendants SACRAMENTO COUNTY DCFAS/CPS**

82.     Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

83.     Defendants, by and through the individual policymakers and/or supervisory officials improperly, inadequately, or with deliberate indifference to the constitutional rights of persons, grossly negligently, or with reckless disregard for constitutional rights, failed to properly train, supervise, retrain, monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants DCFAS/CPS with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the laws of the State of California, the unconstitutional enforcement of local ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other grounds sub nom. City of RIVERSIDE v. Heller, 106 S.Ct. 1573 (1986), and Larez v. Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

84.     Defendant DCFAS/CPS was responsible for the investigation into misconduct committed by its individual employees, as well as disciplining the same.

85.     The policies, customs, and practices of Defendant DCFAS/CPS as described herein, had the following natural and foreseeable results, which were in violation of the civil rights of Plaintiff CYNTHIA, A.H., E.H.; and C.G.:

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

*MARTIN v. County of Sacramento*– Complaint for Damages

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

a.    conduct interviews with minor children in a way so as to attempt to elicit incriminating statements regardless of their veracity;

b.    Keeping investigations open despite a lack of probable cause such that the investigations have no legal basis or merit, and reasonable constitute harassment as opposed to another lawful or legitimate purpose;

c.    Demanding that parents who lack any indication of abuse or misconduct take parenting classes or otherwise submit to voluntary programs in an effort to maintain an open case;

d.    Threatening removal or other retaliatory actions against individuals that do not agree or submit to the whims of social workers; and

e.    Make false representations that a particular investigation will be closed if an innocent parent will continue to acquiesce to additional investigation, or evaluation, for the implied or express purpose of keeping an investigation open despite no justifiable basis to do so.

f.    Conditioning removal of other siblings on abusive conditions such as suggesting break-up of the family as condition precedent for non-removal of other children from the same household.

g.    The long-standing practice of favoring whites instead of blacks resulting in unjust outcomes of investigations leading to numerous lawsuits filed against the county of Sacramento as illustrated in Exhibits A. B and C herein.

h.    Long-standing lack of policy and/or training in recognizing racial profiling and appropriate handling of racial biases in removal cases and in presenting reliable unfabricated evidence to the juvenile court.

86.    The municipality/governmental entity Defendants owed a duty to Plaintiffs and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the 1st, 4th, 5th, and 14th Amendments; to use reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees.

87.    Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiff CYNTHIA, A.H., E.H., and C.G.. alone or constitutes an isolated

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

incident, but is in fact a pervasive policy, practice, and custom of which Defendants are aware as evidenced by Exhibits A, B and C.

88.     The injuries suffered by Plaintiffs as described elsewhere herein, were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

89.     Defendants knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiffs and others to be injured and damages by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

90.     The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiffs herein.

91.     As a direct and proximate result of the actions of individual Defendants, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against SACRAMENTO COUNTY DCFAS/CPS, BRYANT; and DOES 1-25

92.     Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

93.     Defendants, and each of them, engaged in the above-mentioned conduct, which was extreme, outrageous, unlawful, and unprivileged conduct. Such extreme and outrageous conduct included – but is not limited to – the following:

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

(a)   Defendants BRYANT engaged in an inappropriate and leading interview of Minor Plaintiffs especially A.H., an autistic child in a purposeful effort to justify an ongoing investigation and potential removal of Plaintiff CYNTHIA's minor children, made false statements to support allegations of child abuse against Plaintiff CYNTHIA, and demanded compliance with a proposed case plan despite a lack of any legal basis to compel compliance from Plaintiffs;

(b)   Defendant BRYANT engaged in inappropriate interactions with CYNTHIA's husband JEFFREY MARTIN, misrepresenting to him that CYNTHIA is a bad mother, that BRYANT will save the two younger minors from removal as long as JEFFREY MARTIN obtains sole custody of said minors effectively breaking up the family since JEFFREY MARTIN was so harassed and feared engaging with CPS that he left the state of California and moved to Georgia with the younger children permanently separating the family unit.

(c)   Creating an issue of abuse of CYNTHIA with regard to handling the accidental burn on A.H.'s upper thigh despite confirmed reports from the Kaiser doctor and Shrine Hospital's expert that the burn was accidentally caused and not due to child abuse. Despite this pronouncement, defendants DCFAS/CPS and BRYANT maintained the juvenile dependency case with unfounded allegations resulting in unfounded removal of the minor children and a total break-up of the family unit.

(d)   Defendant BRYANT engaged in purposeful harassing contact and threats to intimidate Plaintiff CYNTHIA's husband JEFFREY MARTIN and his mother into admitting to child abuse that never occurred, including but not limited to explicitly threatening to remove the other minor children if JEFFREY did not take sole custody of the younger children causing JEFFREY, the children, and his mother

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

to leave the state of California and permanently move to Georgia.   Defendant

BRYANT misinterpreted the statements of CYNTHIA's mother-in-law to support

BRYANT's allegations of child abuse of CYNTHIA on A.H. arising from the

accidental burn on A.H.'s thigh caused by accidentally spilled hot coffee.

94.     Each of the individual Defendants, participated in, conspired with, approved of and/or aided

and abetted the conduct of the remaining DEFENDANTS.

95.     Defendant BRYANT warned JEFFREY MARTIN that if he wanted to keep the two younger

children at home, J.M. (age 2) and J.M. (8-month-old), he had to leave plaintiff CYNTHIA because

CYNTHIA was a bad parent, and he should seek full custody of J.M. and J.M. Fearful that

BRYANT would remove his two younger children, and because JEFFREY MARTIN was so

shocked and harassed by the presence of BRYANT and the police officers that he did not share this

information with plaintiff CYNTHIA until after he left their home and moved to another state

thereby breaking the family unit as a proximate result of the lies and harassment perpetrated by

defendant BRYANT.

96.     BRYANT's warrant stated that the children were at risk for emotional damage and removal

was necessary, but that was a bold face lie. There was no real reason for the children to be removed.

Spitefully BRYANT ignored all the experts and doctors who said the wound was "accidental" and

"was not child abuse." BRYANT forced CYNTHIA to take A.H. to Shriners Burn Center and after

waiting 7 hours, 4 doctors confirm that this was accidental and "not an episode of abuse." This was

yet another opinion that the burn was accidental, yet BRYANT chose to ignore the doctors opinions

as she wanted the children removed from CYNTHIA no matter what. Since BRYANT couldn't

prove physical abuse, she said the children are going to suffer emotional, and there is substantial

danger to them, which was a lie.

*MARTIN v. County of Sacramento*– Complaint for Damages

97.     As a result of BRYANTS deceptive comments, Plaintiff CYNTHIA was abandoned by her husband JEFFREY MARTIN who moved to another state bringing the two smaller children with him for fear of the smaller children being removed from him and taken into custody as well. Plaintiff CYNTHIA's family unit has been permanently destroyed and efforts are currently being undertaken for the family to heal from the nightmare that defendants set in motion.   Plaintiff CYNTHIA's name remains listed in CACI thereby preventing her from exercising her profession as a social worker and from providing financial support to her family.   The actions of Defendants deprived Plaintiffs of their due process rights under the 14th Amendment and in violation of the First Amendment Right to familial association and freedom from retaliation.

98.     Furthermore, Plaintiff has been limited to the records, and does not have reports, or discovery which would provide the Plaintiffs with the delivered service logs to review the questions BRYANT could have asked, and those logs would provide the plaintiff with information as to the investigation performed by BRYANT, including questions asked of the minors.

99.     Plaintiffs are informed and believe that the Individual Defendants and each of them, intended to cause harm to Plaintiffs, or acted with a reckless disregard of the reasonable likelihood that Plaintiffs would suffer extreme emotional distress as a result of the conduct listed above.

100.     Defendants COS/DCFS, are all vicariously responsible for the conduct of the individual Defendants employed by them, and DOES 1 through 25, inclusive, under California Government Code § 815.2 and other applicable statutory and case law, as well as the common law doctrine of *respondeat superior*.

101.     As the direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs suffered and continue to suffer extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity to an extent and in an amount subject to proof at trial.

*MARTIN v. County of Sacramento*– Complaint for Damages

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**PRAYER FOR DAMAGES**

WHEREFORE, PLAINTIFFS respectfully pray and seek the following relief as to the Causes of Action stated above:

1.  For general damages according to proof at trial on each cause of action for which such damages are available,

2.  For special damages according to proof on each cause of action for which such damages are available;

3.  For compensatory damages according to proof on each cause of action for which such damages are available;

4.  For punitive damages according to proof at trial on each cause of action for which such damages are available;

5.  For reasonable attorney fees and costs of suit, as allowed under the law;

6.  For such other relief as the Court deems proper and just.

7.  Civil penalties according to law; and

8.   Any and all further relief as the Court may deem just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims asserted in this Complaint.


RESPECTFULLY SUBMITTED,


Date: April 11, 2022          LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

By: _____

Vincent W. Davis, Esq.
Edna V. Wenning, Esq.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
440 E. HUNTINGTON DRIVE, SUITE 100
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

EXHIBIT A

Lexis
Client: -None-  Folders  History  Help  More

Select Category
Cases                    45 ⌄

Results for: racial discrimination in Sacramento    🔔  | Actions ⌄

Filters              2  ⌄        [ Civil Rights Law ✕ ]  [ social workers ✎ ✕ ]              Clear | ☆

Filters2

Cases (45)

racial discrimination in Sacramento social workers  Show/hide term highlights ⌄

☐  🗂⌄  🖨  ✉  ⤓  ⬡  ▣  ⬒                        Sort by:  Relevance ⌄

☐  1.  ✥ Jackson v. Cty. of Sacramento HHS
        9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
        Oct 30, 2017 | 2017 U.S. Dist. LEXIS 180587                                                    ✎

                                    Opinions

        Terms: Opinion

        ... it is safe to find that plaintiff has stated sufficient facts, albeit **in** a confusing format, to sustain this
        claim. She alleges differences **in** the way she, as an African American female, was treated differently **in**
        several regards including, among others, the following: 1. A supervisor commented that "all Black
        **social workers** should work **in** the fields and white **social workers** should work only **in** the office." ECF
        No. 20 at ¶¶ 13, 19, 20; She was treated differently, and less supportively, than a white **social worker**
        **in** relation to the conditions for an FMLA leave to care for her mother who suffered from dementia, id.
        at ¶ 17; 2. She was reassigned during ...

        View this passage in full document

☐  2.  Anderson v. Yolo Cnty.
        9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
        Feb 14, 2017 | 2017 U.S. Dist. LEXIS 20919                                                     ✎

                                    Opinions                                              Oth

        Terms: Opinion

        ... Plaintiff's allegations that defendant's **social worker** spoke to her **in** a "demeaning" tone and falsified
        statements, while perhaps indicative of condescension and hostility, are not sufficient, **in** themselves,
        to plausibly suggest that defendant had a racially discriminatory motive. ...

        View this passage in full document

☐  3.  Ⓐ Jackson v. Cty. of Sacramento HHS  ⚭
        9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
        May 28, 2019 | 2019 U.S. Dist. LEXIS 90045

                                    Opinions                                              Oth

Terms: Opinion

... page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties. ) On June 15, 2017, "supervisor Claudia Boyd" stated in a meeting "that the African American social workers should work in the fields and the Caucasian social workers should work only in the office." ( Id. at 5.) Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 28, 2007. (...

View this passage in full document

---

4. ◈ Hall v. Bush

6th Circuit - US District Court Cases | United States District Court for the Western District of Michigan, Southern Division | Jul 21, 2021 | 2021 U.S. Dist. LEXIS 161892

Opinions
★

Terms: Opinion

... 640 F.3d at 729 . In Pittman , the plaintiff-father alleged that a social worker deprived him of his fundamental liberty interest in maintaining his parent-child relationship with his son based upon her misrepresentations about the plaintiff and mishandling of the plaintiff's caregiver approval process ...

View this passage in full document

---

5. ◈ Alonzo v. Principi

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California | Jan 09, 2006 | 2006 U.S. Dist. LEXIS 777

Opinions
★

Terms: Opinion

... EEOC complaint, plaintiff raised one claim--that he was discriminated against when he was not hired for the collateral duty position of clinic manager at the VA's Sacramento Mental Health Clinic. The undisputed facts reveal that plaintiff was employed by the VA as a social worker and assigned split duty stations at the David Grant Medical Center at Travis Airforce Base and the Sacramento Mental Health Clinic. (Def.'s Mot. Summ. J., Ex. B.) Around January 1996, the NCHCS decided that each clinic should...

View this passage in full document

---

6. Ⓐ Scott v. Solano County Health & Soc. Servs. Dep't

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California | Aug 15, 2008 | 2008 U.S. Dist. LEXIS 75757

Opinions                                                    Oth
★

Terms: Opinion

... records, Scott was disqualified from this position because her application did not indicate that she had the requisite experience or a degree with major course work in the preferred fields. SUF P 91. 2 The County records indicate that plaintiff also applied for the Social Worker III position in April 2004. SUF P 14. Plaintiff claims that she did not apply for a Social Worker III position, and that the County tampered with her application to make it appear that she had. Scott Decl. P 14. It is not clear why ...

View this passage in full document

7. ◆ **Bradley v. Cnty. of Sacramento Dep't of Human Assistance of N. Cal. Welfare Div.**

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Jul 21, 2015 | 2015 U.S. Dist. LEXIS 95747

Opinions                                                                                    Oth

★

Terms: Opinion

... "Defendants' personnel specialist explained to plaintiff [that] her test scores were not passing to
qualify for a **Social Worker**'s position." ( Id. ) **In** 2004, "plaintiff took the **social worker** examination
again and was placed on [the] **social worker** list for hire but **in** a low rank." (...

View this passage in full document

8. ◆ **Coleman v. Brown**

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Feb 13, 2018 | 2018 U.S. Dist. LEXIS 116526

Opinions

★

Terms: Opinion

... functional vacancy rate to 17 percent. There were 21 unlicensed psychologists. CSP/Sac had two
psychology interns and two psychology practicum students; these categories were not included **in**
caseload ratios. The two supervising **social worker** positions were filled. Of the 30 **social worker**
positions, 23 were filled for a vacancy rate of 23 percent. The use of 4.5 contractors reduced the
functional vacancy rate to eight percent. There were ...

View this passage in full document

9. ◆ **Coleman v. N.J. Div. of Youth & Family Servs.**

3rd Circuit - US District Court Cases | United States District Court for the District of New Jersey | Mar
03, 2003 | 246 F. Supp. 2d 384

**Overview:** An investigation of mother for child neglect was not unconstitutional since caseworkers'
improper comments did not violate familial integrity, there was no evidence of racial bias, and mother
consented to search of house and interviews with children.

Headnotes                              Opinions

★

Terms: Headnotes

... the hyperpressurized environment of a prison riot or a high-speed chase. However, he or she rarely
will have the luxury of proceeding **in** a deliberate fashion. As a result, **in** order for liability to attach, a
**social worker** need not have acted with the purpose to cause harm, but the standard of culpability for
substantive due process purposes must exceed both negligence and deliberate ...

View this passage in full document

10. ◆ **Johnson v. Clay**

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Apr 29, 2011 | 2011 U.S. Dist. LEXIS 46800

Opinions

★

::: Lexis    ☌    Client: -None- ⌄    Folders    History    Help    More

Select Category
Cases    45 ⌄

Results for: racial discrimination in Sacramento 🔔 | Actions ⌄

⫴ Filters    2    ⌄    | Civil Rights Law ✕ | social workers ✎ ✕ |    Clear | ☆

⫴ · Filters2

Cases (45)

racial discrimination in Sacramento social workers  Show/hide term highlights ⌄

☐  📁⌄  🖨  ✉  ⬇  ⬡  🗐  🗎    Sort by: | Relevance ⌄ |

☐ 11. Ⓐ Carranza v. Lewis
9th Circuit - US District Court Cases | United States District Court for the Northern District of California
Mar 16, 2017 | 2017 U.S. Dist. LEXIS 38293

Opinions                                                        Other
                                                                    ★

Terms: attorney

... Director of CDCR, P. T. Smith, Chief Deputy Warden at PBSP, K. Cruse, Facility Captain at PBSP, R. Randow, Sergeant at PBSP, V. Cappello, Licensed Clinical **Social Worker** at PBSP, K. J. Allen, Appeals Examiner at **Sacramento** , R. Manuel, Inmate Appeals Branch in **Sacramento**, D. Foston, Chief Inmate Appeals Branch, **Sacramento** , D. S. McClure, SSU Agent at Office of Corerctional Safety, Rancho Cordova, Buechner, SSU Agent at Office of Correctional Safety, Rancho Cordova, Scot S. Kissel, ...

View this passage in full document

☐ 12. ✦ Spivey v. Gipson
9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Mar 23, 2015 | 2015 U.S. Dist. LEXIS 37153

                                        Opinions                    Oth
                                                    ★

Terms: Opinion

... had bad experience with the police and there's been a lot of suggestion by defense counsel that they're going to attack the credibility of the police in this case." Third, she was a **social worker. In** the prosecutor's experience, **social workers** "are very forgiving people, people that tend to try to see the good in people." Overall, he said, "I just did not get a good feeling for her as a juror."...

View this passage in full document

☐ 13. ✦ Carranza v. Lewis
9th Circuit - US District Court Cases | United States District Court for the Northern District of California
Jun 30, 2014 | 2014 U.S. Dist. LEXIS 89575

                                        Opinions
                                    ★

Terms: Opinion

... Lewis; Chief Deputy Warden ("CDW") P. T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; Institutional Gang Investigation ("IGI") Sergeant A. B. Gomez; and Licensed Clinical **Social Worker** V. Cappello. Plaintiff also states the same due process and supervisory liability claims against the following Defendants at CDCR in Sacramento: Director Matthew Cate; Appeals Examiner K. J. ...

View this passage in full document

---

☐ 14. Ⓐ Torres v. Hudson 🔗

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Apr 08, 2014 | 2014 U.S. Dist. LEXIS 49130

Opinions

★

Terms: Opinion

... supervisor; Laura Dunkelberger, **social worker with CPS**; and Morag Baired, **social worker** with CSP. ECF No. 1 at 5-15. The complaint alleges that plaintiff Torres is the grandfather of plaintiff A.P.F.T., a minor child (hereinafter the "child"). ...

View this passage in full document

---

☐ 15. Latta v. Otter

9th Circuit - US Court of Appeals Cases | United States Court of Appeals for the Ninth Circuit | Oct 07, 2014 | 771 F.3d 456

**Overview:** Idaho Const. art. III, § 28, Idaho Code Ann. §§ 32-201, 32-202, 32-209, Nev. Const. art. 1, § 21, and Nev. Rev. Stat. § 122.020(1) violated equal protection as they denied lesbians and gays who wished to marry persons of same sex right afforded to persons who wished to marry persons of opposite sex and did not satisfy heightened scrutiny standard.

Opinions                                                    Other

★

Terms: Concur

... the notion that the mere 'equal application' of a statute containing **racial** classifications is enough to remove the classifications from the Fourteenth Amendment's proscription of all invidious **racial discrimination**." 388 U.S. 1 , 8 , 87 S. Ct. 1817 , ...

View this passage in full document

---

☐ 16. ⬤ Jackson v. Felker

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Feb 19, 2009 | 2009 U.S. Dist. LEXIS 13052

Opinions

★

Terms: Opinion

... dice with. [P] Ms. J[.], she was not dismissed for any race-based purpose. She was dismissed based on her educational background. I don't like to keep **social workers**. [P] She's got a master **in social** work. She worked **in** the jail, yes, but she worked **in** the, probably **in** the psych unit as a sociologist of some sort. I don't have any other **social workers** up on the panel. And if I had my choice, I wouldn't have any. [P] So that was my reason for dismissing her."...

☐ 17.  Cornwell v. Warden

9th Circuit - US District Court Cases     United States District Court for the Eastern District of California
Feb 14, 2018     2018 U.S. Dist. LEXIS 25346

Opinions

★

Terms: Opinion

... declaration of James Taylor to demonstrate that Johnson falsely testified that he grew up with petitioner. Taylor's declaration states as follows: he was forty-five years old in 1995; he grew up in the Oak Park area of **Sacramento**; he met petitioner in 1978 at **Sacramento** City College; he knew most people in the Oak Park area; petitioner was from Los Angeles, not **Sacramento**; he had never heard anyone in the Oak Park area called "The Chameleon"; he knew petitioner was not a member of the "Bloods" street gang; and he knew Roland Johnson dealt drugs ...

View this passage in full document

☐ 18.  Williams v. Jurow

2nd Circuit - US District Court Cases     United States District Court for the Southern District of New York
Jun 29, 2007     2007 U.S. Dist. LEXIS 97494

Opinions

★

Terms: Opinion

... because she would not allow Doctor Samedi to examine Amir's genitals and refused to take Doctor Samedi's medical referral, Doctor Samedi conspired with Sarah Rubin, a **social worker** at Gouverneur Hospital, and Kevin Richards, a **social worker** for the New York City Administration for Children's Services ("ACS"), to file a complaint against plaintiff, alleging child abuse and medical neglect (Amended Compl. P 24). ...

View this passage in full document

☐ 19.  Ⓐ Stonum v. Cty. of Kern

9th Circuit - US District Court Cases     United States District Court for the Eastern District of California
Jun 15, 2017     2017 U.S. Dist. LEXIS 93229

Opinions                                                                Oth

★

Terms: Opinion

... to judgment on the pleadings as to plaintiff's claims against individual defendants on the basis that Title VII does not support individual liability for claims of **discrimination** or retaliation. (Doc. No. 29-1 at 3.) In opposition, plaintiff acknowledges that Title VII does not support individual liability for **discrimination** or retaliation claims, but argues that he intended to sue the named defendants in their official capacities. (Doc. No. 31 at 3-4.) Defendants argue in reply that plaintiff's complaint did not name the relevant defendants in their official capacity, and that in any event, the court should dismiss the individual defendants from this action. (Doc. No. 32 at 1-2.)...

View this passage in full document

☐ 20.  ✦ Roe v. Keady

10th Circuit - US District Court Cases     United States District Court for the District of Kansas     Apr 29, 2002     2002 U.S. Dist. LEXIS 8158

Lexis

Select Category

Cases    45 ⌄

Results for: racial discrimination in Sacramento    🔔 | Actions ⌄

Filters    2    ⌄    | Civil Rights Law ✕ | social workers ✎ ✕ |    Clear | ☆

Filters2

## Cases (45)

racial discrimination in Sacramento social workers  Show/hide term highlights ⌄

☐    📁⌄    🖨    ✉    ⤓    ⬡    ▤    ▤    Sort by:  Relevance ⌄

---

☐  21. Ⓐ Stamas v. County of Madera

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
Jan 14, 2010 | 2010 U.S. Dist. LEXIS 3241

Opinions
★

**Terms:** Opinion

... 48 L. Ed. 2d 597 (1976)) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious **racial discrimination**"). **In order to prevail on a selective prosecution claim, a plaintiff** must show that the prosecutorial policy both had a discriminatory effect and was motivated by a ...

View this passage in full document

---

☐  22. Ⓐ Carranza v. Lewis

9th Circuit - US District Court Cases | United States District Court for the Northern District of California
Jul 20, 2015 | 2015 U.S. Dist. LEXIS 94261

Opinions
★

**Terms:** Opinion

... Former Warden G. D. Lewis; Chief Deputy Warden P. T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; and Licensed Clinical **Social Worker** V. Cappello ; and (2) the following persons at CDCR in **Sacramento:** ...

View this passage in full document

---

☐  23. △ HB v. Monroe Woodbury Cent. Sch. Dist.

2nd Circuit - US District Court Cases | United States District Court for the Southern District of New York
Sep 27, 2012 | 2012 U.S. Dist. LEXIS 141252

Opinions
★

**Terms:** Opinion

... started high school in the fall of 2010, "she would be 'taken care of.'" ( Id .) Plaintiffs notified Mrs. Cotto that her children would ... and Municipal. .. Principal Cotto. ... In response, Principal Cotto assured Plaintiffs that the matter would be addressed. ( Id . ¶ 14.) The threats ...

View this passage in full document

---

☐ 24. Ⓐ Williamson v. Basco

9th Circuit - US District Court Cases   United States District Court for the District of Hawaii   Oct 06, 2006   2006 U.S. Dist. LEXIS 74034

Opinions

★

**Terms: Opinion**

... (2) a causal relationship between the alleged conspiracy and his resulting injury; (3) a § 1983 violation; and (4) an invidiously discriminatory purpose. Williamson does allege **racial discrimination** throughout the complaint, but does not allege that the conspiracy was invidiously discriminatory, involving a **racial** or class-based animus, which is necessary to state a claim under section 1985(3) . Id. at 1182...

View this passage in full document

---

☐ 25. ⚫ In re Marriage Cases

CA Supreme Court Cases from 1850   Supreme Court of California   May 15, 2008   43 Cal. 4th 757

**Overview:**  By excluding same-sex couples from the designation of marriage, Fam. Code §§ 300 and 308.5, violated Cal. Const., art. I, §§ 1, 7 because the fundamental civil right to marry applied without regard to sexual orientation and the state did not have a compelling interest in limiting the designation of marriage exclusively to opposite-sex couples.

Opinions                                                         Oth

★

**Terms: Opinion**

... a policy disapproving of the integration or close relationship of individuals of different races **in** the setting **in** question, and as such properly is viewed as embodying an instance of **racial discrimination** with respect to the interracial couple and both of its members. By contrast, past judicial decisions, **in** ...

View this passage in full document

---

☐ 26. Jones v. Tozzi

9th Circuit - US District Court Cases   United States District Court for the Eastern District of California   May 11, 2005   2005 U.S. Dist. LEXIS 55534

Opinions                                                         Oth

★

**Terms: Opinion**

... the family matter before Judge Jack Jacobsen and used non-verbal gestures and conduct that were "sensed and observed by Plaintiff to be harassment, reprisal [and] retaliatory in furtherance of conspiracy." Similarly, Plaintiff alleges that Michael Tozzi's issuance of a declaration in support of Mediator Don Strangio [presumably one of the declarations submitted to this court in a related lawsuit] was also in "furtherance of the conspiracy." Id. at ¶¶ 33-34. (4) Plaintiff demands judgment in the amount of $1,600,000 in damages and $4,100,000 in punitive damages....

View this passage in full document

27. ✦ Nah Sung Park v. City of New York

2nd Circuit - US District Court Cases  |  United States District Court for the Southern District of New York
Jan 16, 2003  |  2003 U.S. Dist. LEXIS 578

**Overview:**  The Rooker-Feldman doctrine barred the natural parents' substantive due process
challenge alleging an unconstitutional removal of their children as well as the claim that the placement
in non-kinship foster care was a constitutional violation.

|  Headnotes  |  Opinions  |
| --- | --- |

★

**Terms: Opinion**

... her deposition, Grace described seeing movies with men and women half-naked and kissing, but
denied seeing a man or woman's "private parts" **in** any movie that she saw **in** the Monroe home. (Yang
Dep. 143-63.) **In** her later deposition, Laura described similar scenes involving some nudity and sexual
content. (Park Dep. 70-80.) **In** a shift from earlier statements to Ramdhany and the hospital **social
worker** , Grace stated that she was washed once by Monroe's daughter "kind of like strangely" for less
than ten seconds. (Yang Dep. 127.) Laura stated that ...

View this passage in full document

28. ✦ Campbell v. Koslosky

3rd Circuit - US District Court Cases  |  United States District Court for the Eastern District of
Pennsylvania  |  Feb 28, 2007  |  2007 U.S. Dist. LEXIS 14898

|  Opinions  |  Oth  |
| --- | --- |

★

**Terms: Opinion**

... I. PROCEDURAL AND FACTUAL BACKGROUND Plaintiff, proceeding **in** forma pauperis , filed his
Complaint on September 11, 2006, alleging that Jennifer Koslosky, a **social worker** for the City of
Philadelphia Department of Human Services; Cheryl Ransom Garner, the Commissioner of the City of
Philadelphia Department of Human Services; John Street, Mayor ...

View this passage in full document

29. ✦ Matter of Lacee L. (Stephanie L.)

NY Court of Appeals Cases from 1794  |  Court of Appeals of New York  |  Oct 18, 2018  |  32 N.Y.3d 219

**Overview:**  New York Court of Appeals held that Family Court can find that the New York City
Administration for Children's Services (ACS) made reasonable efforts toward family reunifications, as
required by Family Ct Act § 1089, if ACS failed to provide reasonable accommodations required by the
Americans with Disabilities Act, 42 U.S.C.S. § 12131(2).

|  Opinions  |  Oth  |
| --- | --- |

★

**Terms: Opinion**

... Family Court responded by requiring ACS to hold regularly scheduled meetings with Stephanie's
counsel and **social worker**; send all referrals and notices of conference **in** writing to Stephanie's
attorney, **social worker** , and Lacee's paternal grandmother (with whom Lacee had been placed); refer
Stephanie to services offered by agencies capable of working with parents with disabilities; furnish ...

Get It Now!  for $24

30.

⁙ ⊚ Lexis    Client: -None-∨    Folders    History    Help    More

Select Category
Cases    45 ∨

Results for: racial discrimination in Sacramento    🔔 | Actions ∨

⇅ Filters    2    ∨    | Civil Rights Law ✕ | social workers ✎ ✕ |    Clear | ☆

⇅ Filters2

Cases (45)    [⟳] ▬ ▬ ⌁

racial discrimination in Sacramento social workers  Show/hide term highlights ∨

☐ 📁∨ 🖨 ✉ ⤓ ⊛ 🗋 🗋    Sort by:  Relevance ∨

☐ 31. ✛ **Murphy v. Goff**

4th Circuit - US District Court Cases | United States District Court for the Western District of Virginia,
Lynchburg Division | Jun 07, 2010 | 2010 U.S. Dist. LEXIS 56119

Opinions
★

Terms: Opinion

... duty not to make a foster care placement that is deliberately indifferent to the child's right to
personal safety and security. This does not mean that **social workers** will be duty-bound to protect the
child from unknown harm or dangers. Nor "does [it] mean that every child **in** foster care may prevail **in**
a ...

View this passage in full document

☐ 32. Ⓐ **Washington v. Alameda County Soc. Servs.**

9th Circuit - US District Court Cases | United States District Court for the Northern District of California
| May 09, 2007 | 2007 U.S. Dist. LEXIS 37696                                              ✓

Opinions                                                    Other
                                                              ★

Terms: attorney

... Lisa Washington, Plaintiff, Pro se, Fremont, CA. For Alameda County **Social** Services Agency,
Alameda County Children & Family Services, Faith Battles, **in** her capacity as an Alameda County
**Social Worker** and an individual, Denise Smernes, **in** her capacity as an Alameda County **Social**
**Worker** and an individual, Suboohi Wadalawala, **in** her capacity as an Alameda County **Social Worker**
and an individual, Sandra Theis, **in** her capacity as an Alameda County **Social Worker** and an
individual, Victoria Wu, **in** her capacity as a Deputy County Counsel and as individual, New United
Motors Manufacturing Inc., Glenn Wallace , Carol Joy Ricardo , Alameda County Public Defender, ...

View this passage in full document

☐ 33. ✛ **Phan v. Haviland**

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
| Aug 25, 2011 | 2011 U.S. Dist. LEXIS 95367

Opinions

Terms: Opinion

... A court need not find all nonracial reasons pretextual in order to find racial discrimination . " [I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext ...

View this passage in full document

---

34. Edwards v. Ctr. Moriches Union Free Sch. Dist.

2nd Circuit - US District Court Cases    United States District Court for the Eastern District of New York
Aug 07, 2012    898 F. Supp. 2d 516

| Opinions | | Oth |
|---|---|---|
| | ★ | |

Terms: Opinion

... short, within the context of this incident, the wrong perpetrated by Kretsos fails to rise to a constitutional violation of the infant plaintiffs' substantive due process. In addition, plaintiffs' have not established a cognizable substantive due process claim that defendants deprived them of their liberty interest in freedom from unjustified intrusions on personal security based upon the racial comments Kretsos allegedly made on April 4, 2003. There is no question that in a civilized society, it is reprehensible for anyone to utter a racial slur against another individual. That being said, the alleged racial slurs were made during the riotous incident which was perpetrated by the students and in which Kretsos had unsuccessfully attempted to contain, but had lost control. In the heat of the moment, individuals do make regrettable statements which in a perfect world should never be uttered. Given the attendant circumstances of this case, the statements made by Kretsos do not rise to the level required ...

View this passage in full document

---

35. ● Perry v. Brown

9th Circuit - US Court of Appeals Cases    United States Court of Appeals for the Ninth Circuit    Feb 07,
2012    671 F.3d 1052

**Overview:** Proposition 8, Cal. Const. art. I, § 7.5, violated the Equal Protection Clause; withdrawal of same-sex couples' existing right under California law to use the designation of "marriage" did not further the reasons offered for the initiative's enactment, leaving the inference that it was based on disapproval of gays and lesbians as a class.

| Opinions | | Other |
|---|---|---|
| | ★ | |

Terms: Dissent

... 102 L. Ed. 2d 854 (1989) ( Scalia , J., concurring in the judgment) ("The benign purpose of compensating for social disadvantages . . . can no more be pursued by the illegitimate means of racial discrimination than can other assertedly benign purposes we have repeatedly rejected."). While the Supreme Court quoted Palmore in ...

View this passage in full document

---

36. ✚ Crittenden v. Calderon

9th Circuit - US District Court Cases    United States District Court for the Eastern District of California
Feb 27, 2003    2003 U.S. Dist. LEXIS 29811

| Opinions | | Oth |
|---|---|---|
| | ★ | |

Terms: Opinion

...demonstrated a significant intellectual level. Last, but not least, Casey was not, nor had she been, a teacher. **9** In reviewing all of the juror questionnaires, it also appears that the prosecutor disfavored **social workers**. Ms. Casey was not a **social worker**. The court will engage in a comparative analysis of juror Casey...

View this passage in full document

---

☐ 37. ⚫ California v. HHS

9th Circuit - US District Court Cases | United States District Court for the Northern District of California
Jan 13, 2019 | 351 F. Supp. 3d 1267

**Overview:** Plaintiff states' motion for a preliminary injunction to prevent implementation of rules creating Religious and Moral Exemptions to the ACA's contraceptive mandate was granted since a preliminary injunction was the only effective way to redress the potential harm to the states until the court could fully assess the merits.

Opinions | | Oth

★

Terms: Opinion

... The Court found that "applying the strong-basis- in-evidence standard to Title VII gives effect to both the disparate-treatment and disparate impact provisions, allowing violations of one **in** the name of compliance with the other only **in** certain narrow circumstances"—specifically, when a government actor had a strong basis **in** evidence to conclude that race-conscious action was necessary to remedy past **racial discrimination**. Id. at 582-83 . The Court described this standard as limiting employers' discretion **in** making race-based decisions "to cases **in** which there is a strong basis **in** evidence of disparate-impact liability," but said it was "not so restrictive that it allows employers to act only when there is a provable, actual violation." ...

View this passage in full document

---

☐ 38. ⚪ Inesti v. Hogan

2nd Circuit - US District Court Cases | United States District Court for the Southern District of New York
| Mar 05, 2013 | 2013 U.S. Dist. LEXIS 29549

Opinions

★

Terms: Opinion

... at 676-77, 129 S. Ct. at 1948-49 . It was with intent-based constitutional claims **in** mind, specifically **racial discrimination** , that the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Id ...

View this passage in full document

---

☐ 39. Ⓐ Gutierrez v. Swarthout

9th Circuit - US District Court Cases | United States District Court for the Eastern District of California
| Oct 21, 2012 | 2012 U.S. Dist. LEXIS 151593

Opinions | | Oth

★

Terms: Opinion

... (No. F053655, March 25, 2009) . FACTS **In** June 2005, Eduardo Negrete and his wife, Elizabeth Figueroa Negrete, lived with their four- and two-year-old daughters **in** a Turlock apartment complex. Elizabeth's brother, Fernando Figueroa, her sisters Araseli and Rubi, and Rubi's husband, Esau Viveros



Sanchez, lived in another apartment in the same complex. Edward and Charlotte lived in a third apartment. Also in the complex were two toddlers whose families were acquainted with each other. On the morning of June 15, 2005, a police officer came to ...

View this passage in full document

☐  40.  Rundle v. Warden

9th Circuit - US District Court Cases    United States District Court for the Eastern District of California    ✓
Nov 21, 2013    2013 U.S. Dist. LEXIS 167445

Opinions

★

Terms: Opinion

... Sheriff's Department interviewed him concerning a series of other homicides in the Sacramento area. During the first interview, defendant waived his Miranda rights and denied involvement in any other murders. During a second interview, defendant continued to deny any role in the murders the officers were investigating, but confessed to another murder that had occurred in the City of Sacramento. Investigators from the Sacramento Police Department were summoned and they interviewed defendant for a third time regarding the murder of Elizabeth Lactawen. On May 10, 1986, a homeless man reported ...

View this passage in full document

⟨   1   2   3   4   5   ⟩

## Searches related to racial discrimination in Sacramento

race discrimination in place of public accommodation

discrimination in public places

sex discrimination in housing

discrimination in retail store

intentional infliction of emotional distress

punitive damages in title vii case

**LexisNexis**

About

Privacy Policy

Cookie Policy

Terms & Conditions

RELX ™

Copyright © 2022 LexisNexis.



Lexis    Client: -None-    Folders    History    Help    More

Select Category
Cases                45 ∨                    Results for: racial discrimination in Sacramento    🔔 | Actions ∨

Filters                2    ∨        Civil Rights Law ✕    social workers ✎ ✕                    Clear | ☆

Filters 2

Cases (45)

racial discrimination in Sacramento social workers  Show/hide term highlights ∨

☐  📁∨  🖨  ✉  ⬇  ⊛  📄  📄                                        Sort by:  Relevance ∨

☐  41.  ⚫ Nicholson v. Williams
          2nd Circuit - US District Court Cases    United States District Court for the Eastern District of New York
          Mar 11, 2002    203 F. Supp. 2d 153

          **Overview:**  The challenged policies of the state's children's services agency worked against the state
          interest in protecting the safety of children; the agency did not conduct sufficient investigation before
          removing children of abused mothers.

                                              Opinions

          Terms: Opinion

          ... rapes combined. Tr. 1540. Second, battered women often suffer from behavioral and psychological
          problems that differentiate them quite sharply from non-battered women. Third, the behavior of
          **social workers** and health service providers was a direct, albeit inadvertent, contributor to women's
          sense of being trapped **in** abusive relationships. Tr. 1540. The result of this study and subsequent
          confirming investigations was a widespread and dramatic change **in** the national medical community's
          awareness of, and responses to, domestic violence....

          View this passage in full document

☐  42.  ⚫ PEOPLE v. DUGGER
          CA Courts of Appeal Cases from 1905    Court of Appeal of California, Third Appellate District    May 11,
          2007    2007 Cal. App. Unpub. LEXIS 3785

                                              Opinions

          Terms: Opinion

          ... Evidence Code sections 1103 and 352 , and abused its discretion **in** excluding the testimony of Vera
          Barter, a **social worker** at Loaves and Fishes, and Diane Evans, a homeless acquaintance of
          defendant's. There is no merit **in** these arguments. Evidence Code section 1103 reads **in** relevant part:
          "(a) **In** a criminal action, evidence of the character or a trait of character (**in** the form of an opinion,
          evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for
          which the defendant is ...

          View this passage in full document

☐  43.

Larry P. v. Riles
9th Circuit - US District Court Cases    United States District Court for the Northern District of California
Oct 16, 1979    495 F. Supp. 926

**Overview:** Child was entitled to judgment in action challenging placement of black children in educable mentally retarded classes because superintendent's and boards' conduct violated equal protection and standardized test violated Title VI of Civil Rights Act.

| Headnotes | | Opinions |
|---|---|---|
| | ★ | |

**Terms: Opinion**

... pool which is never used" or tested by the standardized I.Q. tests. Hilliard 370. 70 Admittedly "black culture" is not easily defined and is not homogeneous in this country. Nevertheless, it is clear that black Americans are distinguished in our society because of their common history of African heritage, slavery, and pervasive racial discrimination, coupled with widespread poverty, inadequate educational systems, and isolation in effectively segregated pockets of our urban centers. This has produced a unique "experience pool." See also Mercer 1581-86. D. The Relevance of Cultural Bias and the ...

View this passage in full document

---

44.  Hernandez v. Grisham
10th Circuit - US District Court Cases    United States District Court for the District of New Mexico    Dec 18, 2020    508 F. Supp. 3d 893

**Overview:** The court dismissed the action filed by parents of children with disabilities against the State arising from limitation of in-person education during the COVID-19 pandemic because plaintiffs failed to demonstrate a substantive due process violation, U.S. Const. amend. XIV, where, inter alia, defendants did not infringe on fundamental rights.

| Headnotes | | Opinions |
|---|---|---|
| | ★ | |

**Terms: Opinion**

... 1 L. Ed. 2d 448 (1957)) . The Tenth Circuit, for example, recently held that a **social worker**'s behavior was conscience-shocking where the **social worker** removed a child from his mother's home to place him in his father's home and: (i) withheld information about the father's criminal history, including his conviction for attempted sexual assault against a minor ...

View this passage in full document

---

45.  J.W. v. Birmingham Bd. of Educ.
11th Circuit - US District Court Cases    United States District Court for the Northern District of Alabama, Southern Division    Sep 30, 2015    143 F. Supp. 3d 1118

| Opinions | | Oth |
|---|---|---|
| | ★ | |

**Terms: attorney**

... SOUTHERN POVERTY LAW CENTER, Montgomery, AL . For A C Roper, in his individual and official capacity as Chief of the Birmingham Police Department, J Nevitt, Officer, in his individual capacity, A Clark, Officer, in his individual capacity, R Tarrant, Officer, in his individual capacity, M Benson, Officer, in her individual capacity, D Henderson, Officer, in his individual capacity, S Smith, Officer, in his individual capacity, Defendants: Eddie T Ramey , Robert H Rutherford, Jr...

View this passage in full document

Searches related to racial discrimination in Sacramento

| | |
|---|---|
| **race** discrimination in **place of public accommodation** | discrimination in **retail store** |
| discrimination in **public places** | **intentional infliction of emotional distress** |
| **sex** discrimination in **housing** | **punitive damages** in title vii case |

 LexisNexis®

About
Privacy Policy

Cookie Policy
Terms & Conditions

RELX™

Copyright © 2022 LexisNexis.

EXHIBIT B

LOGIN

CREATE A FREE ACCOUNT

HOME    NEWS CENTER    BLOG

Monday, April 11, 2022

# Sacramento County Settles Civil Rights Case Arising From Alleged Misconduct of its Social Workers for $600,000

**Share Article**

    

The County of Sacramento has paid $600,000 to prospective adoptive parents David and Rebecca Giammona of Auburn California and their child, Lexi. The sum was $200,000 more than the case had initially been mediated for in 2006.

**SACRAMENTO CA (PRWEB) MAY 4, 2009**

The County of Sacramento has paid $600,000 to prospective adoptive parents David and Rebecca Giammona of Auburn California and their child, Lexi. The sum was $200,000 more than the case had initially been mediated for in 2006.

Case: David A. Giammona, Rebecca J. Giammona, Jessica Kiki Brown aka Alexis Michaela Giammona, a minor by and through her Guardian ad litem Sally Dorer v. County of Sacramento, Sacramento County Department of Health and Human Services, Mary Jordan, Marie Douglas and Helen Barber, as employees of the County of Sacramento, and Does 1-100 inclusive, Superior Case No. 05 AS 02156.

Court: Superior Court of Sacramento County, Sacramento
Judge: David W. Abbott
Date: 3/10/09

Plaintiff Attorneys
Donnie R. Cox, Dennis B. Atchley, Law Office of Donnie R. Cox, Oceanside California; Paul W. Leehey, Law Office of Paul W. Leehey, Fallbrook California.

This is a classic case of government social workers retaliating against people who try to assert their rights in the Juvenile Court system. In our office we refer to it as 'contempt of social worker,' if you challenge these people they will attempt to punish you.

Plaintiffs contended in the lawsuit that in 2002, Plaintiffs David and Rebecca Giammona, residents of Auburn California, who have adopted a total of 7 special needs children and taken in a total of 19 such children, attempted to adopt a sibling on one of their adopted children, but were opposed by the Sacramento County Adoptions Unit, and the child was placed elsewhere. According to court records, Judge Peterson admonished the County for not properly evaluating the Giammona's, calling the family "heroic". In 2003, they attempted to adopt Plaintiff Alexis. After initially approving the home, Plaintiff's alleged the County Social workers realized that the Giammona's were the family involved in the 2002 court action and thereafter retaliated against them by creating false allegations, committed perjury and otherwised violated their Constitutional rights.

Plaintiff's further alleged that without court order or any exigent circumstances, the County social workers removed the child from her prospective Adoptive home. Court records indicate that within one week, they were ordered to return the child and not to remove her without further court order. Thereafter Plaintiff's claimed that the County social workers fabricated allegations to force the Foster Agency to remove the minor from the home (when the trial Judge was on vacation), but again were ordered to return the child.

The Giammonas endured a 5 ½ month trial in Juvenile Court, which consumed more than 3000 pages of transcript. In the ruling from the Juvenile Court, filed with the complaint in the civil action, Juvenile Court Referee Scott P. Harman characterized the actions by County social workers as a "vendetta by the (CPS) adoptions unit against the Giammonas in an effort to do anything that it takes to get this child out of their home," and that the case was "the most outrageous example of a waste of valuable court time."

The Giammonas sued, contending that the social workers fabricated evidence, concealed exculpatory evidence, and that the actions of the social workers, in tandem with the policies and practices of the defendant County, violated their rights as Prospective Adoptive Parents, and their rights under the California Constitution and the Fourth and Fourteenth Amendments to the U.S. Constitution.

Plaintiff's allege the case was tentatively resolved at mediation in July 2006 for the total of $400,000, but County Supervisors rejected that settlement. After numerous depositions, and the loss of their Motion for Summary Judgment, the County and social agreed to settle the case and paid $600,000 to the Plaintiffs, including a structured settlement for Alexis. The County of Sacramento and the social workers denied any wrongdoing. http://www.sacbee.com/ourregion/story/1792879.html

Plaintiff's Attorney Donnie Cox stated, "This is a classic case of government social workers retaliating against people who try to assert their rights in the Juvenile Court system. In our office we refer to it as 'contempt of social worker,' if you challenge these people they will attempt to punish you."

Injuries/Damages
According to their complaint, Plaintiffs sought recovery of the attorney fees incurred in the Juvenile Court action, for their emotional distress, and loss of their right to familial association, guaranteed to them due to their status as Prospective Adoptive Parents.

Result
The case settled for $600,000.

Written by: Dennis Atchley

###

Share article on social media or email:

View article via:

**PDF**    **PRINT**

## Contact Author

**DENNIS ATCHLEY**

7604000263
Email >

**DONNIE R. COX**

760400-0263
Email >

News Center

  

**Questions about a news article you've read?**

**Reach out to the author:** contact and available social following information is listed in the top-right of all news releases.

**Questions about your PRWeb account** or interested in learning more about our news services?

**Call PRWeb:** 1-866-640-6397

  

CREATE A FREE ACCOUNT    CISION

©Copyright 1997-2015, Vocus PRW Holdings, LLC. Vocus, PRWeb, and Publicity Wire are trademarks or registered trademarks of Vocus, Inc. or Vocus PRW Holdings, LLC.

EXHIBIT C

**⠿** **Lexis** 🔍                              Client: -None-⌄    Folders    History    Help    More

---

Select Category
**Cases**    694 ⌄

Results for: defendant Sacramento County Department of Child, Family and Adult Services

🔔  | Actions ⌄

| ↕↓ Filters | 1 | ⌄ | | social workers ✏ × | | | | | Clear  |  ☆ |

↕↓ **Filters1**

**Cases (694)**    ⟲ ▤ ▬ ✂

defendant Sacramento County Department Child, Family Adult Services social workers   Show/hide term highlights ⌄

☐  📁⌄  🖨  ✉  ⬇  ⧉  📄  🗋                                    Sort by:  Relevance ⌄

---

☐  1. 🔲 Doe v. L.A. County Dep't of Children & Family Servs.

CA Courts of Appeal Cases from 1905  |  Court of Appeal of California, Second Appellate District, Division Eight  |  Jun 20, 2019  |  37 Cal. App. 5th 675

> **Overview:** There was no evidence a private foster agency owed plaintiff a duty to protect her from a foster mother's two sons because their sexual abuse of plaintiff was not foreseeable. Thus, the evidence presented by plaintiff was insufficient for a jury to find in her favor and nonsuit was properly granted as to the foster agency.

|           Summary           |       Other       |
|-----------------------------|-------------------|
|                             |         ★         |

> Terms: name

> ... JANE DOE, Plaintiff and Appellant, v. LOS ANGELES **COUNTY DEPARTMENT** OF **CHILDREN** AND **FAMILY SERVICES** et al., **Defendants** and Respondents. Doe v. L.A. **County** Dep't of **Children** & **Family Servs**. ...

> View this passage in full document

---

☐  2. ⬤ Sacramento Cty. Dep't of Child, Family & Adult Servs. v. J.S. (In re E.S.)

CA Courts of Appeal Cases from 1905  |  Court of Appeal of California, Third Appellate District  |  Feb 14, 2022  |  2022 Cal. App. Unpub. LEXIS 845

|           Opinions           |       Oth       |
|------------------------------|-----------------|
|                              |        ★        |

> Terms: name

> ... In re E.S., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. J.S., **Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs**. ...

> View this passage in full document

---

☐  3. ⬤ Sacramento Cty. Dep't of Child, Family & Adult Servs. v. V.F. (In re V.F.)

CA Courts of Appeal Cases from 1905  |  Court of Appeal of California, Third Appellate District  |  Dec 10, 2021  |  2021 Cal. App. Unpub. LEXIS 7732

|           Opinions           |       Oth       |
|------------------------------|-----------------|
|                              |        ★        |

> Terms: name

> ... In re V.F., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. V.F., **Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs**. ...

> View this passage in full document

☐ 4. ● Sacramento Cty. Dep't of Child, Family & Adult Servs. v. J.J. (In re A.J.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District   Dec 27, 2021 | 2021
Cal. App. Unpub. LEXIS 8119

| Opinions | Oth |
|---|---|
| | ★ |

Terms: name

... In re A.J., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. J.J., **Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

☐ 5. ● In re K.S. Sacramento Cty. Dep't of Child, Family & Adult Servs. v. R.H. (K.S.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District   Feb 16, 2022 | 2022
Cal. App. Unpub. LEXIS 914

| Opinions | Oth |
|---|---|
| | ★ |

Terms: name

... In re K.S., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. R.H., **Defendant**; K.S., Appellant. In re K.S. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

☐ 6. ● Sacramento Cnty. Dep't of Child, Family & Adult Servs. v. Mar.C. (In re L.C.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District   Mar 23, 2022 | 2022
Cal. App. Unpub. LEXIS 1762

| Opinions | Oth |
|---|---|
| | ★ |

Terms: name

... In re L.C. et al., Persons Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. MAR.C. et al., **Defendants** and Appellants. **Sacramento** Cnty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

☐ 7. ● Sacramento Cty. Dep't of Child, Family & Adult Servs. v. N.G. (In re N.G.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District   Mar 02, 2022 | 2022
Cal. App. Unpub. LEXIS 1268

| Opinions | Oth |
|---|---|
| | ★ |

Terms: name

... In re N.G., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. N.G., **Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

☐ 8. Ⓐ A.H. v. Sacramento Cty. Dep't Child, Family & Adult Servs.



9th Circuit - US District Court Cases | United States District Court for the Eastern District of California | Sep 17, 2021

Case 2:21-cv-00690-DAD-JDP    Document 41    Filed 04/11/22    Page 52 of 53



Opinions                                                    Other

★

Terms: Opinion

... Martin was fired from her job as a home health medical **social worker** because she was newly listed on the **Child** Abuse Central Index (CACI). Id. ¶ 36. About a week later, Brenda Bryant, a **social worker** with the **Sacramento County Department** of **Child Family**, and **Adult Services** (DCFAS), who was investigating the matter of Martin's minor **children**, went with Elk Grove police officers to the plaintiffs' home. ...

View this passage in full document

9. ● Sacramento Cty. Dep't of Child, Family & Adult Servs. v. M.C. (In re N.C.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District | Oct 19, 2021 | 2021
Cal. App. Unpub. LEXIS 6573

Opinions                                                    Oth

★

Terms: name

... In re N.C., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. **M.C., Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

10. ● Sacramento Cty. Dep't of Child, Family & Adult Servs. v. M.G. (In re D.D.)

CA Courts of Appeal Cases from 1905 | Court of Appeal of California, Third Appellate District | Jan 18, 2022 | 2022
Cal. App. Unpub. LEXIS 255

Opinions                                                    Oth

★

Terms: name

... In re D.D., a Person Coming Under the Juvenile Court Law. **SACRAMENTO COUNTY DEPARTMENT** OF **CHILD, FAMILY** AND **ADULT SERVICES**, Plaintiff and Respondent, v. M.G., **Defendant** and Appellant. **Sacramento** Cty. Dep't of **Child, Family** & **Adult Servs.** ...

View this passage in full document

⟨  1  2  3  ...  70  ⟩

## Searches related to defendant Sacramento County Department of Child, Family and Adult Services

child and family **investigator**                          lincoln hearing and family **offense**

**whittier journal** of child and family **advocacy**      sex offender and crimes against minors registry act

juvenile and family **court journal**                      domestic violence and parent



LexisNexis

About                    Cookie Policy              ℛ RELX ™
Privacy Policy           Terms & Conditions
                                                    Copyright © 2022 LexisNexis.

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 440 E. Huntington Drive, Suite 100, Arcadia, California 91106. On April 11, 2022, I electronically filed the document(s) entitled **FIFTH AMENDED COMPLAINT FOR DAMAGES** with the Clerk of the Court by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system. Participants in this case who are not registered CM/ECF users will be served by mail or by other means permitted by this court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction this filing was made.

Executed on April 11, 2022 in Arcadia, California.

Edna V. Wenning