1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   A.H., *a minor*, et al.,                    No.  2:21-cv-00690-DAD-JDP

12              Plaintiffs,

13        v.                                ORDER GRANTING DEFENDANTS'
                                            MOTION TO DISMISS PLAINTIFFS'
14   SACRAMENTO COUNTY                      SEVENTH AMENDED COMPLAINT
     DEPARTMENT OF CHILD, FAMILY,
15   AND ADULT SERVICES, et al.,            (Doc. No. 70)

16              Defendant.

17

18        This matter is before the court on the motion to dismiss filed on behalf of defendants

19   Brenda Bryant and Sacramento County Department of Child, Family and Adult Services

20   ("DCFAS") (collectively, "defendants") on February 13, 2023.  (Doc. No. 70.)  On March 30,

21   2023, defendants' motion was taken under submission on the papers.  (Doc. No. 73.)  For the

22   reasons explained below, the court will grant defendants' motion to dismiss plaintiffs' seventh

23   amended complaint.

24                            **BACKGROUND**

25        On April 16, 2021, plaintiffs Cynthia Martin ("Martin") and her three minor children,

26   A.H., E.H., and C.G. (the "minor plaintiffs"), filed the complaint initiating this civil rights action

27   brought under 42 U.S.C. § 1983, alleging that the minor plaintiffs were removed from plaintiff

28   /////

                                    1

Martin's custody pursuant to a protective custody warrant that defendants obtained based on allegedly false reports of abuse.  (Doc. No. 1.)

On December 8, 2022, the court held a hearing and, in an orally issued order from the bench, granted defendants' motion to dismiss plaintiffs' sixth[1] amended complaint ("6AC") but also granted plaintiffs one final opportunity to amend the complaint and attempt to cure the numerous and widespread pleading deficiencies that had been identified by the undersigned and the previously assigned district judge in orders dismissing plaintiffs' original and fifth amended complaints.  (Doc. No. 67.)  In its oral ruling, the court emphasized that, in the three prior orders dismissing plaintiffs' complaints, the court had given "very detailed instructions about the deficiencies and how plaintiffs' counsel should consider addressing them," yet plaintiffs had still failed to allege any cognizable claims in their 6AC.  (*See* Doc. No. 67.)  Nevertheless, out of an abundance of caution, the court granted plaintiffs leave to further amend their complaint specifically because plaintiffs' counsel had represented at the December 8, 2022 hearing that they had never seen a copy of the protective custody warrant, which lies at the heart of this case and plaintiffs' judicial deception claim in particular.  (*Id.*)  To enable plaintiffs sufficient time to obtain a copy of that warrant, the court granted plaintiffs leave to file a further amended complaint within sixty (60) days of the court's oral ruling on December 8, 2022.  (*Id.*)

On February 1, 2023, plaintiffs filed the operative seventh amended complaint ("7AC"), in which a clear majority of plaintiffs' allegations have remained exactly the same as those contained in the 6AC, and in which plaintiffs assert the same claims as those alleged in their 6AC. (Doc. No. 69.)[2]  Namely, plaintiffs bring four federal claims under § 1983:  (1) unreasonable seizure (judicial deception) in violation of the Fourth Amendment; (2) retaliation in violation of

---

[1]  Plaintiffs labeled their first amended complaint as their "fifth," and labeled their second amended complaint as their "sixth."  To avoid confusion, the court will use plaintiffs' labels.

[2]  Notably, plaintiffs persist in including allegations against former defendants Elk Grove Unified School District and Ms. Maas (see 7AC at ¶¶ 8–11), even though those defendants were dismissed and terminated from this action on September 20, 2021, and despite the court's oral admonition at the December 8, 2022 hearing that those terminated defendants should not have been re-named in the 6AC.  (*See* Doc. Nos. 20, 67.)

the First Amendment; (3) procedural and substantive due process violations under the Fourteenth Amendment; and (4) *Monell* liability.  (*Id.*)  Plaintiffs also bring a state law claim for intentional infliction of emotional distress ("IIED")—which is the fifth claim, notwithstanding plaintiffs' again mislabeling of this claim as their "sixth" cause of action.  (*Id.*)  Other than a few additional paragraphs that are incorporated by reference, plaintiffs have not added any specific allegations to support their retaliation and due process claims.  (*Compare* Doc. No. 56 at 15–24 *with* Doc. No. 69 at 24–32.)  Many of the new paragraphs that plaintiffs have added in their 7AC are merely purported statements of law and quotes from case law; they are not factual allegations.  (*See* Doc. No. 69 at 6:17–7:17; 25:2–8; ¶¶ 38–40; 13:25–14:18; ¶¶ 44–45, 49.)  In addition, although plaintiffs specifically requested that the court grant them leave to further amend their complaint because their counsel had not yet obtained a copy of the protective custody warrant, the 7AC does not include allegations describing the statements made in the affidavit in support of the issuance of that warrant or providing the specific language used in the warrant itself.  Plaintiffs also have not attached a copy of the protective custody warrant as an exhibit to their 7AC.

Rather, the new allegations in the 7AC focus on the allegedly false statement made by defendant Bryant in an initial detention report that was filed with the juvenile dependency court on March 6, 2019.  (Doc. No. 69 at ¶¶ 37, 41, 65.)  Specifically, the detention report stated that reasonable efforts have been made to prevent or eliminate the need for removal of the children and that "there are no reasonable means by which the children's physical or emotional health may be protected without removing the children from the physical custody of the parent, [plaintiff Martin]."  (*Id.* at ¶¶ 46–48.)  Plaintiffs allege, however, that this representation is not true because plaintiff Martin had agreed to a "safety plan" with DCFAS, to avoid removal of her children, and that safety plan was not "followed and implemented prior to the children's removal."  (Doc. No. 69 at ¶ 50.)  Plaintiffs do not specify in their 7AC when the safety plan was purportedly agreed to or implemented, but plaintiffs do allege that the children were removed despite plaintiff Martin's compliance with the safety plan.  (*Id.* at 42.)

On February 13, 2023, defendants filed the pending motion to dismiss plaintiffs' 7AC in its entirety due to plaintiffs' failure to state any cognizable claims.  (Doc. No. 70.)  On February

27, 2023, plaintiffs filed an opposition to the pending motion, though plaintiffs do not address the majority of defendants' arguments—plaintiffs do not even mention some of their claims, let alone argue that the deficiencies previously identified by the court have been cured in their 7AC.  (Doc. No. 71.)  Plaintiffs appear to have elected instead to use their opposition brief to double down on their position that the court erred in terminating the former defendants Elk Grove Unified School District and Ms. Maas, and that the court also erred in its prior legal analyses of plaintiffs' due process claims.  (*Id.*)  On March 9, 2023, defendants filed a reply to plaintiffs' opposition.  (Doc. No. 72.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

1  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

2  defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

3  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

4        In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

5  material that is properly submitted as part of the complaint, documents that are not physically

6  attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

7  necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d

8  668, 688–89 (9th Cir. 2001).

9                                           **ANALYSIS**

10        Defendants move to dismiss plaintiffs' 7AC in its entirety on the grounds that, despite

11  repeated guidance from the court, plaintiffs have again failed to state any cognizable claims.  The

12  court will address the sufficiency of plaintiffs' allegations as to each claim in turn below.

13  **A.**      **Fourth Amendment Unreasonable Seizure (Judicial Deception) Claim**

14        "To successfully allege a violation of the constitutional right to be free from judicial

15  deception, the [plaintiffs] must make out a claim that includes (1) a misrepresentation or omission

16  (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the

17  judicial decision." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146–47 (9th Cir. 2021).

18  (listing "[e]xamples of judicial deception in child protective custody cases"); *see also Franks v.*

19  *Delaware*, 438 U.S. 154, 171–72 (1978) ("[T]hose allegations must be accompanied by an offer

20  of proof."). "To determine the materiality of omitted facts, [courts] consider whether the affidavit,

21  once corrected and supplemented, establishes probable cause." *Bravo v. City of Santa Maria*, 665

22  F.3d 1076, 1084 (9th Cir. 2011) (internal quotation marks omitted).  A claim for judicial

23  deception must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)

24  because the claim is one "involving fraud." *Benavidez*, 993 F.3d at 1148.

25        As to plaintiff Martin, the court previously explained that plaintiffs had not alleged that

26  plaintiff Martin was subject to a search or seizure, and that there was no basis for her to "assert

27  her children's rights vicariously given the personal nature of Fourth Amendment rights."  (Doc.

28  No. 40 at 4.)  At the December 8, 2022 hearing on defendants' motion to dismiss the 6AC, the

court had again noted that plaintiffs had not added any allegations in their 6AC that, if proven, would show that plaintiff Martin was herself subject to an alleged unlawful search or seizure, which is a necessary element for a cognizable Fourth Amendment claim.  (*See* Doc. No. 67.)  In their 7AC, plaintiffs do not add any factual allegations with regard to plaintiff Martin's Fourth Amendment claim; rather, plaintiffs merely summarize two decisions from the Ninth Circuit that they contend support plaintiff Martin's claim based on her parental relationship with the minor plaintiffs.  (Doc. No. 69 at ¶ 22.)  Plaintiffs' reliance on the Ninth Circuit's decisions in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018) and *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) is misplaced, however, because neither of those cases involved a *parent* asserting a Fourth Amendment violation based on a search of the parent's child.[3]  In *Mann*, the plaintiff parents alleged that the defendant county had violated their *Fourteenth* Amendment rights when they performed invasive medical examinations on their children without parental consent or exigent circumstances, whereas the plaintiff children alleged that the county's medical examinations violated their *Fourth* Amendment rights.  *Mann*, 907 F.3d at 1159.  Similarly, in *Wallis*, the court explained that "[b]ecause only the children were subjected to a seizure, their claims should properly be assessed under the Fourth Amendment," whereas the plaintiff parents' constitutional claims arose under the Fourteenth Amendment.  *Wallis*, 202 F.3d at 1137.  Thus, plaintiffs' citations to these Ninth Circuit decisions does not serve to cure the pleading deficiencies as to plaintiff Martin's Fourth Amendment claim.  Accordingly, plaintiff Martin's first claim for a violation of the Fourth Amendment will be dismissed, without leave to amend.

As to the minor plaintiffs, the court previously explained that plaintiffs had failed to allege the "who, what, when, and where of the judicial deception."  (Doc. No. 55 at 4.)  At the December 8, 2022 hearing, the court emphasized that this glaring deficiency applied to plaintiffs' 6AC as well, to which plaintiffs' counsel responded that plaintiffs could not add allegations as to

---

[3]  The court notes that in the 7AC, plaintiffs provide incorrect citations for these cases.  (Doc. No. 69 at ¶ 22.)  Rather than provide the reporter and date information for Ninth Circuit's decision in *Mann* that plaintiffs intended to cite, plaintiffs incorrectly provide the reporter and date information for the district court's decision in that case, which was affirmed in part and reversed in part by the Ninth Circuit.  In addition, plaintiffs' citation to the decision in *Wallis* provides incorrect pincites and date information.

"the who, what, when, where in the warrant" because they did not have a copy of the protective custody warrant.  (*See* Doc. No. 67.)  Here again, in the 7AC, plaintiffs still do not allege the "who, what, when, and where" of the alleged judicial deception in the warrant, and plaintiffs have not alleged facts as to the specific portion of the affidavit submitted in support of the issuance of the warrant that is claimed to be false, nor have they included an offer of proof, as required.  *See Franks*, 438 U.S. at 171.  Indeed, the only allegations in the 7AC that refer to the protective custody warrant are the same allegations that were included in the 6AC, which the court already found to be insufficient to state a cognizable Fourth Amendment claim.  In other words, the 7AC does not include any additional allegations pertaining to the warrant.  Accordingly, the court concludes that the minor plaintiffs have again failed to state a Fourth Amendment unlawful seizure claim predicated on judicial deception in the protective custody warrant.

        In addition, plaintiffs' Fourth Amendment claim is not saved by the attempt to shift their focus to alleged misrepresentations made by defendant Bryant in the initial detention report.  Specifically, according to plaintiffs, because there was a safety plan in place, defendant Bryant was not truthful when she stated in the detention report that "there are no reasonable means by which the children's physical or emotional health may be protected without removing the children from the physical custody of the parent, [plaintiff Martin]."  (Doc. No. 69 at ¶¶ 46–48.)  However, plaintiffs do not allege when the safety plan was purportedly agreed to; plaintiffs simply imply that the plan was in place *prior to removal*, which is not sufficient to support an inference that the safety plan existed prior to defendant Bryant's submission of the initial detention report.  Plaintiffs allege that in the initial detention report, the social worker (defendant Bryant) concluded that plaintiff Martin was not providing adequate care and supervision, and as to those allegations "of negligent supervision of the children, a Sacramento safety plan was presented and although the mother disagreed with the conclusion about A.H.'s medical treatment, she agreed to monitor the children's health, safety and well-being."  (Doc. No. 69 at ¶ 37.)  These allegations suggest that the submission of the initial detention report may have preceded the agreed-upon safety plan, i.e., that the safety plan was not in existence at the time the initial detention report was submitted.  In addition, plaintiffs have not alleged that the detention report

had any bearing on the juvenile dependency court's issuance of the protective custody warrant, nor have plaintiffs alleged how the statements made in the detention report have any bearing on whether the warrant and supporting affidavit contained false statements.

Moreover, even if plaintiffs were to show that the safety plan existed before defendant Bryant made the allegedly false statement in the initial detention report, defendants have persuasively argued that plaintiffs would still be unable to state a cognizable Fourth Amendment judicial deception claim because that claim would nevertheless be barred by the applicable two-year statute of limitations. (Doc. No. 70-1 at 16–17; 72 at 3–6.) Plaintiffs allege that the initial detention report was filed with the juvenile court on March 6, 2019, and made reasonably available at that time (Doc. No. 69 at ¶ 65), which means that any § 1983 claims arising from that detention report had to be filed by March 6, 2021. *See Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278–79 (9th Cir. 2017) (explaining that California's two-year statute of limitations for personal injury actions applies to § 1983 claims brought in federal courts in California and holding that "[t]he discovery rule requires that judicial deception claims begin accruing when the underlying affidavit is reasonably available"). But plaintiff did not file the original complaint initiating this action until April 16, 2021, and plaintiffs first mentioned the detention report in their 6AC, which was filed on August 1, 2022—both of which were filed after the applicable two-year statute of limitations period had run.

Thus, the court concludes that despite plaintiffs' addition of allegations pertaining to the detention report and safety plan, plaintiffs have still failed to state a cognizable claim under the Fourth Amendment of unlawful seizure by judicial deception.[4]

/////

---

[4] The court need not address defendants' alternative arguments in support of their motion to dismiss plaintiffs' first claim, namely that defendant Bryant would be entitled to immunity for the statements made in the initial detention report because her submission of this report constitutes a "discretionary, quasi-prosecutorial decision," for which social workers have immunity from suit. (Doc. Nos. 70-1 at 17; 72 at 6–7) (citing *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) ("[S]ocial workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'") (citation omitted)).

1    Accordingly, the court will grant defendants' motion to dismiss plaintiffs' first claim,

2    without leave to amend.

3    **B.    First Amendment Retaliation Claim**

4    To state a First Amendment retaliation claim, a plaintiff must allege that:  (1) "the plaintiff

5    was engaged in constitutionally protected activity"; (2) "the defendant's actions caused the

6    plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to

7    engage in that activity"; and (3) "the defendant's adverse action was substantially motivated as a

8    response to the plaintiff's exercise of constitutionally protected conduct." *Corales v. Bennett*, 567

9    F.3d 554, 563 (9th Cir. 2009).

10    As noted above, plaintiffs have not added any allegations in their 7AC specifically in

11    support of their retaliation claim.  The court will not repeat its prior analyses explaining why

12    plaintiffs' allegations are insufficient to state a First Amendment retaliation claim; instead, the

13    court incorporates those analyses by reference in this order.  (*See* Doc. Nos. 40 at 6–7; 55 at 4;

14    67.)  In short, plaintiffs fail to state a cognizable retaliation claim because there are no allegations

15    in the 7AC that the minor plaintiffs engaged in any First Amendment conduct, and neither

16    plaintiff Martin's decision to refuse to produce A.H.'s medical records when asked by defendant

17    Bryant nor her decision to care for A.H.'s burn at home constitutes expressive First Amendment

18    conduct.

19    Accordingly, the court will grant defendants' motion to dismiss plaintiffs' second claim of

20    retaliation, without leave to amend.

21    **C.    Fourteenth Amendment Due Process Claim**

22    Here too, plaintiffs have not added any allegations in their 7AC specifically to support

23    their due process claim.  Moreover, despite the court explicitly reaffirming at the December 8,

24    2022 hearing that the minor plaintiffs' substantive due process claim had already been dismissed

25    without leave to amend and should not have been included in the 6AC, plaintiffs persist in using

26    "plaintiffs" (plural) in their allegations in the 7AC.  (Doc. No. 69 at ¶¶ 88–102.)  The court will

27    not repeat its prior analyses explaining why plaintiffs' allegations are insufficient to state a Fourth

28    Amendment due process claim; instead, the court incorporates those analyses by reference in this

9

1   order.  (*See* Doc. Nos. 40 at 7–9; 55 at 5; 67.)  In short, plaintiffs' 7AC does not allege what

2   specific procedural protections they were entitled to, nor how those protections were allegedly

3   denied to them, and plaintiff Martin's bare allegations of a rupture in the family unit are

4   insufficient to allege harmful conduct that shocks the conscience as required for a cognizable

5   substantive due process claim.

6       Accordingly, the court will grant defendants' motion to dismiss plaintiffs' third claim of

7   due process violations, without leave to amend.

8   **D.      Plaintiffs' *Monell* Claim against defendant DCFAS**

9       Given that plaintiffs have not sufficiently alleged any of their constitutional violation

10   claims, there is likewise no underlying deprivation of a constitutional right sufficiently pled to

11   establish DCFAS's liability under *Monell v. Department of Social Services*, 20 436 U.S. 658

12   (1978), which requires a plaintiff to allege and prove:  "(1) that [the plaintiff] possessed a

13   constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that

14   this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

15   the policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*,

16   654 F.3d 892, 900 (9th Cir. 2011).  This failure alone would be sufficient to dismiss plaintiffs'

17   claims based on *Monell* liability.  But it is worth noting that plaintiffs have also still failed to

18   allege any widespread custom by DCFAS, a deficiency the court has previously noted and

19   brought to counsel's attention several times.  (*See* Doc. Nos. 40 at 9–10; 55 at 5–6; 67.)

20       Plaintiffs attempt to cure this deficiency by attaching as an exhibit to the 7AC a

21   declaration from their attorney in this action, who has practiced juvenile dependency law and who

22   declares that based on his experience observing social workers, including social workers in

23   Sacramento, "approximately 40% of the time social workers still remove the children despite the

24   presence of a safety plan."  (Doc. No. 69 at 47.)  However, plaintiffs' counsel's declaration refers

25   to situations in which a safety plan exists (i.e., where a social worker and parent develop an

26   agreed-upon safety plan), but counsel does specify whether the safety plans in those instances

27   were actually followed and implemented, as opposed to simply existing.  Even assuming that

28   plaintiffs' counsel's declaration could serve as support for plaintiffs' allegations of a custom and

1   practice by defendant DCFAS—and the court is skeptical that it could given the complete lack of

2   foundation and factual context for the conclusory assertions counsel makes therein—it is not clear

3   that such an alleged custom is relevant to this action.  The gravamen of plaintiffs' claims pertains

4   to representations made in the initial detention report, not to whether the minor plaintiffs were

5   removed despite the existence of a safety plan.

6         For these reasons, the court concludes that despite the addition of plaintiffs' counsel's

7   declaration as an exhibit to the 7AC, plaintiffs have still failed to state a cognizable claim against

8   defendant DCFAS based on a theory of *Monell* liability.

9         Accordingly, defendants' motion to dismiss plaintiffs' fourth claim of *Monell* liability

10   against defendant DCFAS will be granted, without leave to amend.

11   **E.**      **Intentional Infliction of Emotional Distress ("IIED") Claim**

12         An IIED under California law requires:  (1) extreme and outrageous conduct by the

13   defendant; (2) with the intention of causing emotional distress or reckless disregard of the

14   probability of causing emotional distress; (3) plaintiff's suffering of severe emotional distress;

15   and (4) actual and proximate causation of plaintiff's emotional distress by defendant's conduct.

16   *See Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

17         Here too, the court incorporates by reference the prior analyses explaining why plaintiffs'

18   allegations were insufficient to state a cognizable IIED claim.  (Doc. No. 40 at 10–11; 55 at 6;

19   67.)  The only new allegation plaintiffs have added in their 7AC to support their IIED claim

20   pertains to the removal of the minor plaintiffs despite the existence of the safety plan, and the

21   alleged custom by defendants of removing children despite the existence of a safety plan

22   approximately 40% of the time.  As explained above, the declaration by plaintiffs' counsel does

23   not specify whether the instances constituting the "40% of the time" involved safety plans that

24   had been implemented but were perhaps nevertheless deemed insufficient to protect the children

25   at issue.  The court is not persuaded that a social worker's decision to remove children from their

26   parent's custody despite the "existence" of a safety plan necessarily amounts to extreme or

27   outrageous conduct.  Although plaintiffs allege in the 7AC that plaintiff Martin was complying

28   with the requirements of the safety plan, that allegation is insufficient to demonstrate that

1    removing the minor plaintiffs constituted extreme and outrageous conduct.  Moreover, plaintiffs

2    do not specify in the 7AC what emotional distress the minor plaintiffs had suffered as a result of

3    defendants' conduct.

4         Accordingly, defendants' motion to dismiss plaintiffs' "sixth" claim of IIED will be

5    granted, without leave to amend.

6         F.  **Dismissal Without Further Leave to Amend**

7         As indicated above, the court has determined that plaintiffs' remaining claims must be

8    dismissed at this time without leave to amend.  The undersigned is well aware that to the extent

9    the pleadings can be cured by the allegation of additional facts, courts will generally freely grant

10   leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247

11   (9th Cir. 1990) (citations omitted).  Moreover, as indicated at the December 8, 2022 hearing on

12   the previous motion to dismiss, the court understands the serious nature of the subject matter of

13   this action.  Nonetheless, as outlined above, the court has identified the deficiencies of plaintiffs'

14   complaints on now four prior occasions and provided the legal standards applicable to claims

15   plaintiffs are attempting to assert.  (Doc. Nos. 20, 40, 55 and 67.)  Despite these efforts, as

16   described above counsel for plaintiffs have been unable to cure the noted pleading deficiencies.

17   The court has reluctantly concluded that the granting of further leave to amend under these

18   circumstances would be futile.  *See Telesaurus VPC, LLC v.* Power, 623 F.3d 998, 1003 (9th Cir.

19   2010) ("A district court may deny a plaintiff leave to amend . . . if the plaintiff had several

20   opportunities to amend its complaint and repeatedly failed to cure deficiencies."); *Boyack v. Regis*

21   *Corp.*, 812 F. App'x 428, 431 (9th Cir. 2020)[5] (affirming dismissal without leave to amend due to

22   a plaintiff's failure to cure pleading deficiencies); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d

23   1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the

24   complaint could not be saved by amendment."); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d

25   1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the

26   complaint . . . constitutes an exercise in futility").

27   _____

28   [5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

**CONCLUSION**

For the reasons set forth above,

1.      Defendants' motion to dismiss (Doc. No. 70) is granted;

2.      This action is dismissed due to plaintiffs' failure to state a claim; and

3.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 13, 2023**                    _____
                                                              UNITED STATES DISTRICT JUDGE